(21 App. Div. 468.)

MOSES v. HATCH et al.

(Supreme Court, Appellate Division, First Department. October 22, 1897.)

1. TRUSTS—CREATION—SUFFICIENCY OF EVIDENCE.

One M., by a letter written to defendant H., set forth the terms of a trust which he proposed to create in connection with certain securities to be assigned to H. for that purpose. In subsequent letters he referred to possible additions or modifications of the plan thus stated, and explained the details more fully. The securities were accordingly assigned to H., who accepted the performance of the trust duty. *Held*, that M. had reserved the right to make changes in the scheme, but, as he made none during his life, H. was bound to carry out the trust in accordance with M.'s intention as gathered from the whole correspondence.

2. APPEAL—REVIEW—QUESTIONS FIRST RAISED.

Where the case was submitted on the question of fact as to whether a trust was in fact created, the question as to the validity of the trust, if created, could not be first raised on appeal.

Appeal from trial term.

Action by Charles E. Moses against Albert H. Hatch and others, individually and as executors, and others. From a judgment for plaintiff entered on a decision after a trial by the court without a jury, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

Artemus B. Smith, for appellants.

W. W. Niles, for respondent.

PATTERSON, J. The court below found that a trust was created in the securities assigned to the appellant Hatch, notwithstanding the absolute character of the assignment, and that the terms of the trust were established with sufficient definiteness by the letters written by William Moses, the creator of the trust, to the defendant Hatch. We think the interpretation of those letters by that court was the correct one. It appeared that prior to November, 1890, William Moses was the owner of the insurance policy on the life of Van Bokkelen, and of the membership certificate in the Produce Exchange assigned by him to Hatch. They being his property, he desired and intended that title to them should be made in such a way that they might be kept for the benefit of the family of Charles H. Moses, so that they would not form part of the assets of his own estate. That object is stated in the first of the written communications to Hatch, made on the 19th of November, 1890. In that letter William Moses refers to the membership ticket, saying that he had bought it in the name of Charles H. Moses, and wanted the payments kept up for the benefit of the family of the latter; and he then proceeded to state that what he wanted to do was to assign in trust the paid-up policy of life insurance, and also the ex-membership ticket, and, after his (William Moses') death, to have Hatch pay all the dues so long as Charles H. Moses might live, and, at the death of the assured in the life insurance policy, collect that policy, and, if Charles H. Moses then lived, to put the money so collected at interest, and continue to pay the dues of the membership certificate, and should there be any money left from the life insurance or the sale of the membership certificate, and William Moses then be alive, to pay the whole proceeds to his wife, and, if she were not living, then and in that case to pay it to Charles E. and Henry M. Moses, share and share alike, or to the one then living. That letter states the intention to assign, and the general purpose of the assignment. It is not claimed on the part of Hatch or any one else that the assignment was not made in connection with some ulterior purpose of William Moses, in the nature of the constitution of a trust; but it is claimed that the subsequent letters of William Moses to Hatch indicate that there was only a general intention on the part of Moses to create the trust, and that no specific beneficiary was ever fixed upon. An analysis of the subsequent letters will show that this is not the proper view. On the 20th of November, 1890, William Moses wrote to Hatch that his letter of the 19th was written without much thought, but he also says, "At the same time, you better preserve it, and we can talk it over and see what may be added to it;" thus leaving for future consideration only whether anything should or might be added to it. He says:

"I did not intend to name in the assignment of the life policy anything, it being in trust, but leave that all with you. as the future brings it along, to carry out what I intend to have done as you may understand my instructions and wishes. That will leave you free and clear of any one in the future to answer to but yourself, and you cannot be called to account in any shape or way by my heirs or relations, only to inform some one of them that I have parted with the life insurance to you, and my estate has no further interest in it. It may be as well, perhaps, that I inform Charles Moses of what I have done with the L. policy, and for what purpose."

This letter is not susceptible of the interpretation that the trust purpose is to be indicated to the trustee only in the future, but is merely an intimation that details of the arrangement may be made in the future, or that some modification of the trust purpose might be adopted in the future, but there was no change of the purpose already designated. That Hatch understood the trust purpose was settled is inferable from the letter of November 24, 1890, addressed to him by William Moses, and in which it is said, "Your understanding of what I wish done seems to be correct, so far as the proceeds from the life insurance and P. D. E. membership is concerned, but not quite clear on the life policy," and the writer then proceeds to say that the life policy is fully paid up, "as you will see when I hand it to you"; evidently indicating that there was some misunderstanding on Hatch's part with reference to the status of that policy and the amount that was collectible upon it. The writer then stated that, as to the Produce Exchange membership dues, he intended to pay them as long as he lived, and then he wanted Hatch to pay them and open an account with the life insurance and membership, and keep all paid up until the life policy became due by the death of the assured therein or the death of Charles Moses, "to end the payments on the membership." After that, all that Hatch paid out he was to receive back from the money collected on the life policy and the membership sale; adding, "I think you see plainly what I intend." He also stated that he wanted no trusteeship in the account, which refers merely to the bookkeeping account; he desired no trusteeship to appear there, for the reason he had stated in his previous letter, namely, that Hatch might be able to say that there had been an absolute assignment to him. And he further adds, "As you see from what I have written, my object only is to keep the gratuity fund alive on Charles M. till due for his family, some time in the future." He then proceeded to say that he would make the assignments that day, and send them in a day or two. Now, it seems to be true that there is a lapse of several years' time before further correspondence took place with reference to this matter, but on January 22, 1896, William Moses wrote to Hatch that he would send with that letter the life policy assigned to him "by two assignments." When those assignments were delivered does not appear. Presumably, the life policy was not delivered until January 22, 1896. In this letter the writer states that:

"I will see you, or write more fully what I intend any money received over your dues shall be used for finally, when closed up. Keep all the papers I send you, and only take the policy to the company's office to attach assignment."

We think that all this correspondence, full effect being given it, establishes these facts: That William Moses intended to create a trust in the proceeds of these two securities; that Hatch took the absolute assignment of them, subject to the execution of that trust; that the terms of the trust were expressed; that William Moses' intention was plainly manifested, and that all that can be said with reference to any change is that Moses reserved to himself the right to make a change or some other disposition, and never did so; that his purpose being clear to create the trust, and Hatch having accepted the performance of the trust duty, and no change ever having been made by the creator

of the trust, we think Mr. Hatch was bound to carry it out in accordance with the intention of William Moses, as that intention is gathered from the whole correspondence. We also think that the terms of the trust as found by the court at special term are the correct ones. The provision with reference to Susan Moses, the wife of William Moses, seems to have had reference only to her receiving the benefit during the lifetime of William Moses. Any payment to her is made conditional upon William Moses being alive. So that, under the conditions existing at the time this suit was brought, the real beneficiaries are Charles E. and Henry M. Moses, or the survivor of them.

It is urged that the trust, as constituted, offends against the statute preventing the suspension of the absolute ownership of personal property for more than two lives in being at the time of the creation of the trust. But no such question arises upon this record. It was not raised in the court below, was not passed upon, nor is there any exception which gives rise to it. The whole case was submitted upon the mere question of fact as to the creation of the trust, and not as to its validity or enforceability if it were created.

The judgment below should be affirmed, with costs. All concur.