If the amount due the former attorneys was agreed upon, the plaintiff could substitute another attorney in their place only upon paying to them the amount due. If the amount due was the subject of dispute, or if the question of the existence of the attorney's lien was controverted, the court had ample power to determine these issues in a summary manner. The court could not, however, ignore these issues, and without the consent of the parties, or sufficient cause being shown, direct the substitution of another attorney upon condition that a bond be given to the former attorneys to secure their claims for services rendered.

The order appealed from is reversed, with $10 costs and disbursements, and the motion is denied, with $10 costs, and with leave to the plaintiff to move in the court below to have the amount due his former attorneys ascertained and determined.

---

(62 Misc. Rep. 561.)

### LAUTERBACH v. NEW YORK INV. CO. et al.

(Supreme Court, Special Term, New York County. March, 1909.)

1. INSURANCE (§ 587*)—LIFE POLICY—RIGHT TO CHANGE BENEFICIARY.
    Where there is no declaration that the designation of the beneficiary of a life policy shall be irrevocable, insured may change the beneficiary; and a beneficiary has no vested right in the policy from the mere circumstance that originally she was named as such.
        [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1469, 1470; Dec. Dig. § 587.*]

2. TRUSTS (§ 37½*)—RELATION—DELIVERY.
    The failure to deliver life policies, payable to a trustee, and a letter of instructions as to the disposition of the proceeds, to the trustee in the lifetime of the settlor, did not defeat the trust.
        [Ed. Note.—For other cases, see Trusts, Cent. Dig. § 53; Dec. Dig. § 37½.*]

3. WILLS (§ 91*)—TESTAMENTARY INSTRUMENT—DECLARATION OF TRUST.
    A statement in a letter of instructions to a trustee as to the disposition to be made by him of the proceeds of life policies payable to him "in case anything should happen to me" should not be treated as an attempted testamentary disposition of property, but as a declaration of the purposes of the trust created in the policies.
        [Ed. Note.—For other cases, see Wills, Cent. Dig. § 220; Dec. Dig. § 91.*]

4. TRUSTS (§ 59*)—VALIDITY—EFFECT OF REVOCABILITY.
    The mere fact that a trust is subject to revocation by the settlor during his life is not inconsistent with a lawful trust continuing effective as long as unrevoked.
        [Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 78, 80; Dec. Dig. § 59.*]

5. FRAUDULENT CONVEYANCES (§ 116*)—TRANSFERS INVALID—PREFERENCES.
    Where there is nothing to show that the preferential scheme of a trust to pay certain creditors to the exclusion of others was in contemplation of a general assignment for the benefit of creditors, or that it was intended to avoid the statute prohibiting preferences for more than one-third of the debts of assignor, such trust is not avoidable by unpreferred creditors.
        [Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 371; Dec. Dig. § 116.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**6. INSURANCE (§ 590\*)—LIFE POLICY—LIEN ON PROCEEDS.**

Where moneys used to pay the premiums on life policies were not borrowed under any agreement having reference to the policies, the persons loaning the moneys are not entitled to liens on the proceeds.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1479–1482; Dec. Dig. § 590.\*]

Action by Alfred Lauterbach against the New York Investment Company and others. Finding for plaintiff.

Hoadly, Lauterbach & Johnson (Sidney Rosenbaum, of counsel), for plaintiff.

Hotchkiss & Barber (Henry M. Bellinger, of counsel), for defendant Guardian Trust Co.

Charles E. Hotchkiss and Julian C. Harrison, for defendant Shattuck.

Phelps, Evins & East (Samuel H. Evins, of counsel), for defendant Spier.

Gifford, Hobbs & Beard (James M. Beard, of counsel), for defendant Gifford.

Thompson, Vanderpoel & Freedman (Henry Thompson, A. H. Vanderpoel, and Carleton S. Cate, of counsel), for defendant Bowling Green Trust Co.

GREENBAUM, J. This action, which was commenced by Alfred Lauterbach, as trustee, and after his death continued by Louis Adler, as substituted trustee, was brought for instructions from the court as to the proper disposition to be made of a fund of $75,000, with accumulated interest, and a determination of the various claims to said fund made by the several defendants. On the afternoon of Saturday, May 6, 1906, at about 4:30 o'clock, one Charles L. Spier called at the law office of the late Alfred Lauterbach, and, learning that Mr. Lauterbach had gone for the day, he obtained from a clerk, upon request, an envelope, into which he put certain papers, which he thereupon handed to the clerk in the sealed envelope, together with the book, with the following instructions:

"I am going to leave these things with you to give to A. L. (meaning Lauterbach). Put them in the safe and give them to him the first thing Monday morning. I will be over; but don't you wait for me. You give them to him."

The clerk did as requested, and on the following Monday morning at 10 o'clock Mr. Lauterbach took possession of the papers and book, which was a pass book of the New York Investment Company with the Guardian Trust Company. The papers consisted of two policies of insurance on the life of said Charles L. Spier, each issued by the New York Life Insurance Company, for $50,000 and $25,000, respectively, each bearing date April 5, 1906, and a letter signed by Spier, reading as follows:

"My Dear A. L.: I want to hand you herewith two policies, amounting to $75,000, made out to your order as trustee. In case anything should happen to me, will you dispose of the proceeds as follows: Pay into the Guardian Trust Company for account N. Y. I. & I. Co., $68,067.09; to Eugene B. Howell, $2,500; to my wife, Dot W. Spier, $4,432.91; total, $75,000.00. In accordance with

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

a resolution of the board of directors of December 11, 1905, I have paid out as follows: To settle judgment against N. Y. I. & I. Co., with costs and interest, $2,932.91; to C. L. S., for services as per resolution, $4,000—$6,932.91. There is due the Richmond L. & R. R. for advances the sum of $1,048.75, and to Davies, Stone & Auerbach, with interest at 5 per cent. from March 22, 1897, $7,185.61. A. I. Beebe claims $2,400 for services. He might be paid $2,000. With the above matters paid off, the balance should be divided among the stockholders, as there are no other debts outstanding. If you can consistently carry this matter out for me and keep the facts to yourself, you would confer a lasting obligation upon me. Will you do so? Appreciating anything you may do,

    "I am sincerely yours,                  Charles L. Spier.

"I turn over to you as treasurer the stock of the ferry company, vouchers, and such other books as I have."

Prior to Lauterbach's receipt of these documents, and at about 4 o'clock in the morning of May 7, 1906, Spier died as the result of a self-inflicted pistol shot. The policies, which were issued on April 5, 1906, originally had been made payable to Dot W. Spier, the wife of Charles L. Spier, as beneficiary, and on April 30, 1906, the insurance company, at Spier's request, changed the beneficiary to "Alfred Lauterbach, trustee," and indorsed the change on the policy. The change in the beneficiary was effected in strict accordance with the terms of the policies, which conferred the right upon the assured "to change the beneficiary at any time and from time to time," provided the policies were not then assigned. On May 11, 1906, Alfred Lauterbach, trustee, received from the New York Life Insurance Company $75,000, the proceeds of the two policies. The premium of the $50,000 policy was paid by Spier with a draft for $1,650.50 on the defendants Keech, Loew & Co., bearing date April 11, 1906, payment thereon being made on April 5, 1906. The premium of $1,357.75 on policy for $25,000 was paid in currency on May 5, 1906.

The proofs established that in April and May, 1906, and down to the time of his death, Charles L. Spier was indebted to the New York Investment & Improvement Company in the sum of $75,000 by reason of moneys which he had obtained by means of two checks for $70,000 and $5,000, respectively, against the account of that company with the Guardian Trust Company, signed by him as president, and bearing the forged signature of Alfred Lauterbach as treasurer of the company. The deceased was indebted to defendant Eugene B. Howell in the sum of $2,500, and the defendant Dot W. Spier claims that Spier had converted certain certificates of stock of the New York Investment & Improvement Company belonging to her, the value of which, however, was not shown.

The plaintiff and the defendant Shattuck, as receiver of the New York Investment & Improvement Company, the Guardian Trust Company, and Howell, all of whom are named in the letter of Spier to Lauterbach, contend that a valid trust was created by Spier. The defendant Gifford, a judgment creditor, and the defendants Keech, Loew & Co. and Bowling Green Trust Company, general creditors of the deceased Spier, and Dot W. Spier, his wife, claim that the alleged trust is void and ineffective as against them. The Bowling Green Trust Company also claims that, having loaned Spier $2,500 on May 5, 1906, out of which the premium on the $25,000 was paid, it is entitled to follow the loan into the policy and receive it out of the proceeds thereof.

The defendant Dot W. Spier further contends that the invalidity of the trust operates to reinstate her as beneficiary under the policies and to entitle her to receive its full proceeds.

Where, as in this case, there was no declaration that the designation of the beneficiary shall be irrevocable, the insured had the right under the terms of the policies to change the beneficiary from time to time, and it needs no citation of authorities in support of the proposition that the defendant Dot W. Spier, the wife of the deceased, had no vested rights in the policies from the mere circumstance that originally she had been named as the beneficiary. Alfred Lauterbach, trustee, the designated beneficiary, was entitled to receive the proceeds of the insurance policies.

Considering, now, the question of the validity of the alleged trust, it may be conceded that, until a declaration by Spier as to the purposes of the trusteeship of Lauterbach, the trust might be construed as for the benefit of the settlor. Had Spier died before such declaration, the proceeds derived from the insurance policies doubtless would have inured to the benefit of his estate; but, if the letter addressed to Lauterbach is a sufficiently clear and explicit declaration of the trust, the failure to deliver the policies and letter of instructions to Lauterbach in the lifetime of the settlor will not defeat the trust. Robb v. Washington & Jefferson College, 185 N. Y. 485–492, 78 N. E. 359, and cases therein cited. The subject of the asserted trust was peculiarly one which became effective only upon the death of the creator of the trust, and hence the reference in the letter to Lauterbach as to the disposition to be made by him of the proceeds of insurance "in case anything should happen to me" should not be treated as an attempted testamentary disposition of property, but as a declaration of the purposes of the trust created in the policies of insurance. The mere circumstance that the trust was subject to revocation on the part of the settlor during his lifetime is not inconsistent with a lawful trust which would continue effective as long as it remained unrevoked. Van Cott v. Prentice, 104 N. Y. 45–55, 10 N. E. 257; Robb v. Washington & Jefferson College, 185 N. Y. 485, 78 N. E. 359; Phipard v. Phipard, 55 Hun, 433, 8 N. Y. Supp. 728; Moses v. Hatch, 21 App. Div. 468, 47 N. Y. Supp. 554, affirmed 163 N. Y. 554, 57 N. E. 1118.

If a trust was created, it now remains to be considered whether it is valid as against the creditors of the deceased, Spier. There is to my mind no legal proof of insolvency of the deceased, although the conviction is strong that such was nevertheless the fact. But, assuming a condition of insolvency, there is not the slightest ground for holding that the preferential scheme of the trust to pay certain creditors to the exclusion of others was in contemplation of a general assignment for the benefit of creditors, or that it was intended to avoid the statute prohibiting preferences for more than one-third of the debts of an assignor of an assigned estate. The trust, therefore, was not avoidable by the unpreferred creditors. Delaney v. Valentine, 154 N. Y. 692, 49 N. E. 65, and cases therein cited. The conclusion to which I have come is fortified by the circumstance that the settlor's death alone resulted in transferring a comparatively insignificant asset in his lifetime to a very considerable one. An intent to evade the statute against

preferences will only be inferred where the circumstances of the case with reasonable certainty lead to such a conclusion. Shotwell v. Dixon, 163 N. Y. 43, 57 N. E. 178.

As to the claims of the defendants Keech, Loew & Co. and Bowling Green Trust Company, that they are entitled to liens on the fund for the moneys obtained from them by the deceased Spier and used in the payment of the premiums on the policies, it seems sufficient to note that these moneys were not received under any agreement having reference to the policies, and hence these parties must be treated as ordinary creditors.

There must be a decree in favor of the plaintiff, adjudging the validity of the trust and the distribution of the trust fund in accordance with the directions of the trust.

Settle decree on notice.