In the Matter of the Transfer Tax upon Stock of THE
WILLIAM B. DANA COMPANY Held by JACOB SEIBERT,
JR., as Trustee, Respondent.

THE COMPTROLLER OF THE STATE OF NEW YORK,
Appellant.

Transfer tax — when instrument of trust testamentary in character — when transfers under trust instrument should be combined with legacies for purpose of assessment of transfer tax.

1. An instrument transferring shares of stock to a trustee which reserved to the donor the income from the stock during his lifetime; the right to direct how the trustee should vote thereon; the power to cause the trustee to sell the stock in such manner and at such price as the donor might direct; the right to substitute a different trustee at will; and the absolute right of revocation at any time during the lifetime of the donor, is testamentary in character and must be regarded as speaking from the time when it became effective by reason of the death of the party who executed it.

2. Where the beneficiaries under such trust instrument are the same persons who are legatees under the donor's will, the transfers under the trust instrument should be combined with the legacies given by the will for the purpose of assessing the transfer tax required under the provisions of chapter 706 of the Laws of 1910.

*Matter of Dana Co.*, 164 App. Div. 957, reversed.

(Submitted May 24, 1915; decided July 13, 1915.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered October 16, 1914, which affirmed an order of the Suffolk County Surrogate's Court assessing a transfer tax.

The facts, so far as material, are stated in the opinion.

*John S. Jenkins* for appellant. The manifest intention of the law was to treat transfers as testamentary which either possessed the ambulatory characteristics of a will (like the trust deed herein of the 655 shares) or where the transfer was not absolute. They are in substance testamentary dispositions which take effect at

death, are taxable under the statute in force at that time and consequently the aggregate of such transfers, effective at death whether by will, gift *causa mortis*, grant or gift in contemplation of death, should be aggregated and not segregated in levying the death duties. (*Matter of Buckingham*, 106 App. Div. 13; *Matter of Howe*, 86 App. Div. 286; 176 N. Y. 570; *Billings* v. *People*, 189 Ill. 472; *Ayers* v. *Title & Trust Co.*, 187 Ill. 42; *Matter of Graves*, 242 Ill. 212; *Nat. S. D. Co.* v. *Stead*, 250 Ill. 584; *McCurdy* v. *McCurdy*, 83 N. E. Repr. 881; *Matter of Seaman*, 147 N. Y. 69; *Matter of Euston*, 113 N. Y. 174; *Matter of Palmer*, 117 App. Div. 360; *Matter of Swift*, 137 N. Y. 77.)

*Winthrop E. Dwight* for respondent. The surrogate properly determined that under the statute governing taxable transfers in force at the time of the death of the maker of the trust the sum representing the cash value of stock conveyed by the trust deed should not be added to any sum or sums passing to the same persons under the will of the said maker of the trust deed, but that the tax should in all respects be assessed against the several beneficiaries under the trust deed as property derived from an instrument entirely distinct from the will. (L. 1910, ch. 706; *Keeney* v. *Comptroller*, 222 U. S. 525; *Matter of Durfee*, 79 Misc. Rep. 653.)

WILLARD BARTLETT, Ch. J. On the 22d of March, 1905, William B. Dana, since deceased, transferred 655 shares of the capital stock of a corporation known as the William B. Dana Company to Jacob Seibert, Jr. At the same time he executed and delivered to Mr. Seibert an instrument in writing whereby he appointed Mr. Seibert trustee of such shares of stock, reserving to himself, however, the income, if any, which should be derived from the stock and the right to revoke the trust and retake the stock at any time, or to appoint a new trustee.

Mr. Dana also reserved the power to dictate how the stock should be voted. The instrument directed the trustee, after Mr. Dana's death, to pay the income of the said stock to an adopted daughter of Mr. Dana during her lifetime, and after her death to an adopted son during his life, and after the death of the survivor to set over the stock absolutely to the children of the adopted son in equal parts, or, in default of such children, to the persons named as residuary legatees in Mr. Dana's will. The beneficiaries under this trust instrument are the same persons who are the legatees under Mr. Dana's will, and the question presented by this appeal is whether in fixing the transfer tax the transfers under the trust instrument should be combined with the legacies given to the same persons by the will, or whether they should be taxed independently of each other on the ground that the respective transfers belong to different classes.

When the matter first came before the surrogate he held that the transfers under the trust instrument should be merged with the legacies under the will for the purposes of appraisal; but upon reconsidering the question he came to the contrary conclusion, holding that when the gifts were derived from different instruments made at different times there would seem to be no reasonable rule requiring them be combined and taken together as one gift.

I am of opinion that the view originally entertained by the learned surrogate was the correct one. There can be no doubt that the property transferred to Jacob Seibert, Jr., under the trust agreement was subject to a transfer tax as a gift intended to take effect at or after the grantor's death. (*Matter of Bostwick*, 160 N. Y. 489.) The trust instrument was essentially testamentary in character. It reserved to the donor the income from the stock during his lifetime; the right to direct how the trustee should vote thereon; the power to cause the trustee to sell the stock in such manner and at such price as

the donor might direct; the right to substitute a different trustee at will; and the absolute right of revocation at any time during the lifetime of the donor.　In fact, after the execution of the deed of trust Mr. Dana still retained just as much power over the stock as he would have had if he had disposed of it by will instead of executing the instrument which he delivered to Mr. Seibert.　There was no element of finality about the instrument during the donor's lifetime, for it was just as capable of revocation as a will would have been.　Under these circumstances it was a transfer of a testamentary nature, and must be regarded as speaking from the time when it became effective by reason of the death of the party who executed it.

The death of William B. Dana occurred on October 10, 1910, and the transfer tax applicable to his estate was that imposed by chapter 706 of the Laws of 1910, which was the first statute providing for a progressive rate of taxation upon inheritances.　The rates of taxation therein prescribed were denominated primary rates; and it was provided that whenever any real or personal property or beneficial interest therein, which passed by any taxable transfer to or for the use of any person or corporation, should exceed the amount of $25,000 over and above the statutory exemptions, the rate of taxation should be upon all amounts in excess of $25,000 up to and including the sum of $100,000, twice the primary rates; upon all amounts in excess of $100,000 up to and including the sum of $500,000, three times the primary rates; upon all amounts in excess of $500,000 and up to and including the sum of $1,000,000, four times the primary rates, and, upon all amounts in excess of $1,000,000, five times the primary rates.　The 655 shares of the stock of the William B. Dana Company were appraised by the surrogate at $68,775.　Under the scheme of the act of 1910, if the legacies which the beneficiaries of the trust instrument received under Mr. Dana's will were added to the

value of their interests under the trust instrument, the amounts coming to them would be so increased as to subject them to the cumulative provisions of the statute. The argument against this course which prevailed with the surrogate was that the respective transfers were of different classes. It seems to me, however, that being of the same testamentary character, taking effect at the same time, so that as matter of fact upon Mr. Dana's death the beneficiaries received an aggregate sum made up of the gift under the trust instrument and the gift under the will, the entire transfer should be viewed as a whole and falls within the purport and intent of the statute. If the gift under the trust instrument had been irrevocable so that its execution and delivery in 1905 placed it beyond the power of the donor to take it back, the case would be quite different. Then the interest of the beneficiaries would have been vested at the time of the execution and delivery of the trust deed and although it might not take effect in possession till followed by the death of the donor it might well be held that the gift thereunder was so distinct from that under the will as to forbid an aggregation of the amounts. In the present case, however, the trust instrument took effect precisely as would a will bequeathing the stock which it conveyed; and the fact that the testator thus withdrew a portion of his property from the operation of his will does not prevent that portion from being a part of a transfer to the same parties taking effect upon his death to be combined with their legacies under the will in ascertaining the aggregate under the act of 1910.

The order of the Appellate Division and decree of the surrogate should be reversed, with costs, and the matter remitted to the Surrogate's Court for proceedings in accordance with this opinion.

HISCOCK, COLLIN, CUDDEBACK, HOGAN, CARDOZO and SEABURY, JJ., concur.

Ordered accordingly.