In the Matter of the Appraisal of the Estate of SHERMAN VOORHEES, Deceased, under the Law Relating to Taxable Transfers of Property.

STATE TAX COMMISSION, Appellant; CHEMUNG CANAL TRUST COMPANY OF THE CITY OF ELMIRA and THE PROVIDENT LIFE AND TRUST COMPANY, Respondents.

Third Department, March 8, 1922.

Taxation — transfer tax — no tax due under Tax Law, § 220, where decedent during lifetime assigns insurance policy on his life to trustee to provide trust fund for benefit of family after his death accompanied by trust deed containing right of revocation and proceeds of policy are paid to trustee on death of insured.

No tax is due under section 220 of the Tax Law, as it existed on May 1, 1915, relating to taxable transfers of property, where one during his lifetime, by an assignment containing no reservations or conditions, assigns an insurance policy on his

life to a trustee to provide a trust fund for the benefit of his wife, his son and others after his death, accompanying such assignment with a deed of trust which provides that the premiums on the policy shall be paid by the insured, reserves to the insured the right to receive all distributive shares of surplus of the insurance company issuing the policy and also reserves power of revocation providing that upon revocation the trustee shall release all right to said policy which it may have acquired by virtue of the deed or any assignment made in order to effectuate the deed; and the policy is delivered forthwith to the trustee and, after the death of the insured, the proceeds of the policy are paid to the trustee.

The transfer of the policy and its proceeds was not made in contemplation of death, nor made to take effect in possession or enjoyment upon death only, within the meaning of the statute, and furthermore the proceeds of the policy, which came rightfully into the hands of the trustee, never became part of the estate of the insured, and so there has not been and cannot be a transfer of the proceeds of the policy under the will of the deceased or the intestate laws of the State.

Appeal by the State Tax Commission from an order of the Surrogate's Court of the county of Chemung, entered in the office of said surrogate on the 29th day of July, 1918, affirming a prior order entered on the 9th day of May, 1917, fixing and assessing a tax upon the transfers of property of Sherman Voorhees, deceased.

The deceased, Sherman Voorhees, a resident of Chemung county, N. Y., died May 1, 1915. He had taken out ten policies of insurance on his life, aggregating $43,000. Each of these policies was issued by the Provident Life and Trust Company of Philadelphia. The first of these policies was taken out September 26, 1905, and the last two were taken out May 5, 1914. Each was made payable to the executors, administrators or assigns of the assured. In six of the policies the assured reserved the right to change the benficiary; in six of the policies the assured was given the privilege at any time of substituting another policy of different form or plan in place of the present policy. Four of the policies, aggregating in amount $20,000, were ordinary life policies payable at death. Six of the policies were so-called "ten-year renewable term" policies, in which the decedent was given the privilege of continuing the insurance for successive periods of ten years each upon terms and conditions named. All the policies, however, were payable, if then outstanding, at the time of his death. All the policies were in fact outstanding at the time of his death and have been paid. The deceased, by written assignment, in January, 1912, assigned eight of these policies, and on July 29, 1914, assigned two of these policies, to the Provident Life and Trust Company of Philadelphia, in each assignment it being recited that the said Provident Life and Trust Company are "Trustees under a Deed of Trust of even date herewith made and executed by Sherman Voorhees." He

transferred the said policy described to the said trust company, and constituted said assignee his attorney to collect all of the moneys which shall become due on the policy, whether for dividends, capital sum insured or otherwise. No reservations or conditions are contained in these assignments. The surrogate refused to assess a tax upon the transfers of these policies or their proceeds, and this appeal is taken. In one of the trust deeds, dated January 2, 1912, it is recited: "Know All Men by These Presents that I, Sherman Voorhees, * * * for the purpose of settling and securing the rights and property hereinafter mentioned, upon the uses and trusts herein limited and declared, have caused to be made payable to the said The Provident Life and Trust Company of Philadelphia, their successors and assigns, five certain policies of insurance issued by said company on my life, to wit: [here is given a description of each policy by number and amount] (and any policy or policies which may be issued in place of either or all or any thereof), upon the uses and trusts hereinafter set out, without any liability on the part of said company for the payment of any premiums at any time to fall due on said policies, it being expressly understood and agreed that said premiums shall be paid by me when and as the same shall be due and payable. *First:* If the proceeds of all or any of said policies shall become payable by reason of my death, then and in such case to collect and receive said proceeds in one capital sum for each of said policies which may so become payable, and invest * * * the capital moneys which may be so received, at the risk of the trusts herein created. [Then follow the directions as to the trust and its execution.] *Third:* I hereby reserve the right to collect and receive upon my own receipt, without the joinder of said trustees therein, all distributive shares of the surplus. of the said The Provident Life and Trust Company of Philadelphia, which may be from time to time allotted and set apart to said policies. *Fourth:* I hereby reserve the right to revoke and annul this deed by an instrument of revocation to be executed by me and lodged with said trustees, whereupon said trustees shall release all right, title and interest in and to said policies which said trustees may have acquired under or by virtue of this deed or under or by virtue of any assignments of said policies executed to said trustees by me in order to effectuate the terms of this deed." Each trust deed contains like provisions. Each of the policies was delivered in Philadelphia to the trustee at the time of the assignment thereof and has ever since remained in the possession of the trustee in Philadelphia and after the death of the deceased the proceeds of each policy was delivered to the trustee, which now holds the

same as a part of the trust fund designated in the deed of trust. There was never a revocation of any provision of the deed of trust, no change of beneficiary and no change in the policies after they were so delivered. The Provident Life and Trust Company of Philadelphia is a life insurance company on the mutual plan. The amount of each year's premium is estimated, with a reasonable margin of safety. At the end of the year the actual cost of insurance, including all the elements of cost, is calculated and, if the amount of premiums paid exceeds the actual cost chargeable to the policy, a so-called dividend is allowed on the policy to the person assured, which may be paid to him in cash or in part payment of his next premium, or left to accumulate to the credit of the policy.

*Wallace W. Seeley,* for the appellant.

*Stanchfield, Collin, Lovell & Sayles* [*Henry B. Collin* of counsel], for the respondents.

VAN KIRK, J.:

By section 220 of the Tax Law (as amd. by Laws of 1911, chap. 732), entitled "Taxable transfers," it is provided (as it stood on May 1, 1915): " A tax shall be and is hereby imposed upon the transfer of any tangible property within the State and of intangible property, or of any interest therein or income therefrom, in trust or otherwise, to persons or corporations in the following cases, subject to the exemptions and limitations hereinafter prescribed:

" 1. When the transfer is by will or by the intestate laws of this State of any intangible property, or of tangible property within the State, from any persons dying seized or possessed thereof while a resident of the State. * * *

" 4. When the transfer is of intangible property, or of tangible property within the State, made by a resident, * * * by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor or intended to take effect in possession or enjoyment at or after such death."

A *bona fide* transfer of property between the living, unless made in contemplation of death or intended to take effect in possession or enjoyment at or after death, is not within the reach of the transfer tax.

The proceeds of a life insurance policy, made payable to the assured or to his estate upon his death, comes into his estate at his death, and then becomes a part of his estate. As such it is transferred as a part of his estate under his will or the intestate laws of the State. Such transfer of the proceeds is taxable. (*Matter of Knoedler,* 140 N. Y. 377.) But if such a policy is payable, and is paid, to some other beneficiary named, its proceeds never

come into his estate and are not taxable under the Transfer Tax Law. (*Matter of Parsons*, 117 App. Div. 321.)

After the assignments (not now considering the trust deeds) the trustee had the same rights in relation to the property assigned before the death of the insured as it had after. The insured did not assign the policies in contemplation of death in any sense other than in the recognition that at some time he must die, or than any person contemplates when he procures a policy payable after his death; nor, within the meaning of the statute, did he perform these acts in the transfer of property to take effect at or after death only. A man who changes the name of a beneficiary in a life insurance policy, issued on his life and payable after his death, does not in the meaning of the statute make a transfer of property to take effect at or after death. The assignments of these policies were by instruments absolute in terms, which contained no reservations or conditions, separate from the trust deeds. The policies were delivered in Pennsylvania when the assignments were made and remained there until the death of the insured. When the assignments and policies were so delivered the transaction was complete; the assignee then acquired an immediate right to the proceeds of the policies when payable; and this conclusion is not mistaken, because of the fact that, under the terms of the policies, the assured could again change the beneficiary. (*Matter of Parsons, supra.*) After his death the proceeds of each policy was paid to the assignee in Pennsylvania, who then stood under the assignments in the same position as if named the beneficiary in the policy. The proceeds never came into his estate.

The interesting question in this case is presented by the reservation in the trust deeds of the power to revoke the trust deeds by a formal instrument of revocation " whereupon said trustees shall release all right, title and interest in and to said policy which said trustees may have acquired under or by virtue of this deed or under or by virtue of any assignment of said policy executed to said trustees by me in order to effectuate the terms of this deed." This is not a reservation of power to revoke the assignments, but the trustee, upon accepting the deeds containing this reservation, became obligated to release all claims under the assignments; and, by the terms of the deeds, the assignments and the deeds are one transaction to effectuate the plan. The appellants claim that this disposition of the policies and their proceeds is testamentary in character and the power of revocation suspended the completion of the transfer of the policies until the power could not be exercised because of death. The court, in determining whether there is here a transfer taxable under the

statute, looks at the nature and essence and effect of the transfer. (*Matter of Orvis*, 223 N. Y. 1.) Generally a life insurance policy is not properly acquired for the benefit of the owner; it is not an investment, or part of his estate; it returns to him no income; nor generally is it an instrument for his present or future use, but rather a contract to secure payment of a sum after his death to another, the beneficiary named therein. The intent of the assured with respect to these policies seems plain; he acquired the several policies and assigned them to provide a trust fund for the benefit of his wife, his son and others after this death; and by the trust deeds he directed how, under what conditions, when and to whom payments therefrom should be made after his death. By his plan he was not distributing after death property valuable to him or his estate. Unless he made the contracts with the insurance companies and paid the premiums, there would be no sums coming in therefrom and, having made the contracts, except in the event of a default in payment of the premiums, the contracts of insurance would be of little value to him or his estate. If he failed to pay the premiums on the ten-year renewable term policies, they would lapse and on the four straight life policies there is but a small paid-up value. He has indeed by his trust deeds directed how the proceeds of these policies shall be distributed after death, and named the conditions under which the beneficiaries should take. But this is the effect in principle of every life policy payable at death to another than the assured or his estate. Considering the nature of the property, we do not consider that the plan of the assured should be held to be of a testamentary character. The reserved right of revocation, standing alone, is in substance the right to name a new beneficiary, which is the right which exists generally under life insurance policies. The reservation does not indicate a present intent to change his purpose or plan with reference to the policies and their proceeds. There might be many reasons why he would desire to change his trustee, or to change some of the provisions of the trust deeds. The reservation does not at all indicate that he intended to recover possession of the policies to his own use. That he has availed himself of the assignments and a trust deed to dispose of these proceeds no more indicates an intent to defeat the Transfer Tax Law than does the procuring of a life policy payable to another than himself or *his estate*. There is nothing to indicate that the grantor made the reservation, or that he intended to use it for any purpose other than to protect his beneficiaries. It has been held that, where a grantor has made an apparent transfer of his property, but withheld to himself the income during his life and such control of the property granted

as only an owner possesses, the transfer is of a testamentary nature and takes effect at death. (*Matter of Dana Co.*, 215 N. Y. 461; *Matter of Bostwick*, 160 id. 489.) In *Matter of Masury* (28 App. Div. 580; affd., 159 N. Y. 532) a father, acting in good faith and for the sole purpose of providing for his adopted sons, executed and delivered trust deeds providing that the net income of the trust was to go immediately to the beneficiaries of the trust and the principal after certain dates was to be paid over to certain parties designated therein; it was held that the trust funds were not taxable under the Transfer Tax Law; the grantor had reserved the right to revoke the trust deeds at any time during his life, but the court refused to hold that this reservation of the right to revoke disclosed the intent that the gift should not take effect in possession or enjoyment till at or after death. In the *Bostwick Case* (*supra*) the court said (p. 493): " I think that we may have gone too far in generally affirming the *Masury* decision; certainly the limit was then reached, beyond which the courts could not go without emasculating the provisions of the statute." But the Court of Appeals has not disapproved of that decision and it still stands as a decision of that court. There would have been stronger reason for that decision had the property transferred been life insurance policies and their proceeds.

By reserving to himself the dividends, so called, from the policies, he did not reserve the use of the property transferred to himself. It was specifically provided, as is usual in respect to life insurance, that he should pay the premiums, and the dividends, so called, are simply a return to him of so much of the premium paid by him as was an overcharge (above the actual cost) made upon the estimated cost of carrying the insurance for him during the period for which premium was paid. The dividends, so called, are not dividends in the usual meaning of that word. They are not a return upon an investment or on property.

The right to substitute any other policies in place of either of those assigned was simply a provision of prudent foresight (in harmony with a right he had under the terms of the policies) and does not indicate that the insured intended to retain the property in his control or change his original purpose.

We conclude, therefore, that the assured assigned and delivered these policies before death; that the transfers of the policies and their proceeds were not made in contemplation of death, nor made to take effect in possession or enjoyment upon death only, within the meaning of the statute; that the proceeds of the policies under the assignments thereof came rightfully into the hands of the Provident Life and Trust Company of Philadelphia; that they

never became the property of the estate of the deceased, and that there has not been and cannot be a transfer of the proceeds of the policies under the will of the deceased or the intestate laws of the State.

The decision of the surrogate should, therefore, be affirmed, with costs.

Order of the surrogate unanimously affirmed, with costs.