In the Matter of the Appraisal under the Transfer Tax Law of the Estate of ADOLF HAEDRICH, Deceased.

Surrogate's Court, Kings County, September 10, 1929.

*Cullen & Dykman,* for the executors.

*Harry M. Peyser,* for the State Tax Commission.

WINGATE, S. The question here presented is one of no inconsiderable moment in consequence of the growing practice of establishing trusts to hold policies of life insurance, collect the proceeds upon the death of the insured, and administer such proceeds according to the provisions of the trust instrument. It arises upon an appeal by the State Tax Commission from the *pro forma* order of this court entered February 27, 1929, assessing and determining the tax payable in accordance with the report of the appraiser.

The grounds of the appeal are stated to be:

"1. That the Appraiser herein failed and neglected to include as a portion of the decedent's estate, and taxable as such, the proceeds of certain life insurance policies mentioned in the particular trust agreement dated June 20, 1923, wherein the decedent was named as 'Donor' and the Brooklyn Trust Company as 'Trustee' concerning a total of insurance amounting to the net income of $77,161.91 in that under certain trust agreement and by virtue of the terms of the insurance policies mentioned, particular powers were reserved to the Donor, the decedent above named, to revoke, modify, alter or otherwise make further disposition and that by reason thereof to reserve control and domination over the afore-mentioned insurance policies, and the proceeds thereof.

"2. That the trust agreement in question provided for gifts in contemplation of death and also was modified and changed to become operative within a period of two years from the date of decedent's death and that any gifts thereunder were made in contemplation of death and therefore taxable."

The trust agreement referred to was entered into between the decedent as donor and the Brooklyn Trust Company as trustee under date of June 20, 1923. It provided for the deposit by the donor of certain specified securities having a face value of $23,250 and a stated market value of $22,135, which were to be held by the trustee with power of reinvestment, etc., and the proceeds used, *first*, for the payment of premiums on the life insurance policies constituting the trust; *second*, to pay any surplus income to the donor; and, *third*, after his death, for distribution among the beneficiaries of the trust. It is conceded that such securities were properly taxable, and they are not involved in this proceeding.

Four specified insurance policies on the life of the donor were transferred by the instrument, namely, $5,000 New York Life Insurance Company ordinary life policy No. 7194446; $5,000 New York Life Insurance Company participating life policy No. 7617850; $11,000 Travelers Insurance Company non-participating life policy No. 788308, and $3,000 Travelers Insurance Company non-participating life policy No. 793375. The document specified that the donor should forthwith have the trustee designated as beneficiary under the several specified policies; that it should be wholly vested with all rights provided therein, and that all moneys which might be received on the policies on the death of the donor should be held by the trustee for the trusts set up in the agreement. These trusts were, primarily, the income of fifty per cent for the donor's wife for life and twenty-five per cent for each of his daughters with remainders over. The agreement further provided that the donor might deposit additional securities and/or insurance policies subject

to the provisions of the trust and that the trust instrument should be subject to revocation or alteration by him.

This document was modified by a subsequent written agreement dated and executed August 27, 1926, the only effect of which was to change the shares and manner of distribution of the trust fund, the donor's wife and two daughters being continued as the sole beneficiaries.

The donor died on February 3, 1928.

By stipulation of the parties it appears that at the time of his decease there were twelve policies of insurance, copies of which have been submitted, in the trust. Three of these are referred to in the original agreement, namely, New York Life policy No. 7194446 and Travelers policies Nos. 788308 and 793375. The other nine are not referred to in any agreement, nor is it made to appear what became of New York Life policy No. 7617850, referred to in the original agreement.

Of the nine additional policies which were stipulated as being in the trust estate at the death of the donor, seven were issed by the New York Life Insurance Company and two by the Travelers Insurance Company. The total face value of all was $74,500. Of these, policies to a face total of $29,000 were originally payable to the donor's wife as beneficiary, $3,000 to his daughters, $25,000 to his executors, administrators and assigns, and $10,000 to the firm of William Haedrich & Sons. All of the foregoing were subsequently made payable to the trustee as such by notice of change of beneficiary or assignment, power for which action was reserved to the donor in the policies. The final sum of $7,500 is made up by a policy which was originally issued with the trustee as the designated payee.

Before entering upon a consideration of the fundamental question here at issue, which is as to the effect of the trust arrangement on the taxability of the proceeds of the insurance, it will be well to note briefly the law regarding such taxability where no trust has been set up. In such cases the uniform tenor of all adjudications in this State in which the question has been determined is to the effect that where a policy is made payable to a named individual, the proceeds are not subject to the transfer tax of the State of New York (*Matter of Voorhees*, 200 App. Div. 259; *Matter of Parsons*, 117 id. 321; *Matter of Elting*, 78 Misc. 692; *Matter of Fay*, 25 id. 468; *Matter of Glueck*, N. Y. L. J. April 30, 1927, p. 522; *Matter of Whaling*, Id. May 25, 1927, p. 963. See, also, *Matter of Van Dermoor*, 42 Hun, 326; *Johnston* v. *Scott*, 76 Misc. 641), but that where a policy is made payable to the decedent's estate, or to his executors, administrators and assigns without

qualification, the proceeds form a part of the estate and are subject to the imposition of a transfer tax. (*Matter of Knoedler*, 140 N. Y. 377.) These points are expressly conceded by all parties, and the only question remaining is whether or not the status of non-taxability of the proceeds of the policies is altered by reason of the fact that such designated payee takes in the capacity of a trustee for the wife and children of the insured and not in its own right.

So far as the diligence of counsel and independent research by the court has disclosed, this question has been presented for adjudication in the courts of this State on four and only four occasions, namely, in the Surrogate's Court of Westchester county in December, 1912, in *Matter of Elting* (*supra*); in the Appellate Division, Third Department, on March 8, 1922, in *Matter of Voorhees* (*supra*), and in the Surrogate's Court of New York County in April and May, 1927, in *Matter of Glueck* and *Matter of Whaling* (*supra*). The first two of these cases were decided prior to the taking effect of the amendments of section 220 of the Tax Law by chapter 430 of the Laws of 1922; and the latter two, while decided since that time, were expressly based on the authority of *Matter of Voorhees* and did not consider the effect, if any, of the 1922 amendment which, the appellant argues, altered the law affecting such transactions.

. In addition to the foregoing authorities, the appellant calls the attention of the court to the decision of the New Jersey Supreme Court in *Fagan* v. *Bugbee* (143 Atl. 807), in which that court, in construing the applicable New Jersey statute, held that proceeds of insurance received by a trustee were taxable.

In the absence of controlling authority on the subject, it becomes the duty of the court to consider the questions presented in the light of basic principles and to seek a solution in conformity with reason, justice and fundamental public policy.

So far as is here material, section 220 of the Tax Law (as amd. by Laws of 1925, chap. 143), as in effect at the time of the death of this decedent, reads as follows:

" § 220. Taxable transfers — residents. A tax shall be and is hereby imposed upon the transfer of any property real or personal, or of any interest therein or income therefrom in trust or otherwise, to persons or corporations in the following cases, subject to the exemptions and limitations hereinafter prescribed:

" 1. When the transfer is by will or by the intestate laws of this state from any person dying seized or possessed thereof while a resident of the state.

" When the transfer is made by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor * * .* or intended to take effect in possession or enjoyment at or after such death, or where any change in the use or enjoyment of property included in such transfer, or the income thereof, may occur in the lifetime of the grantor * * * by reason of any power reserved to or conferred upon the grantor * * * either solely or in conjunction with any person or persons to alter, or to amend, or to revoke any transfer, or any portion thereof, as to the portion remaining at the time of the death of the grantor * * *, thus subject to alteration, amendment or revocation. * * * "

As noted, the fundamental basis of this appeal is that the change in the wording of the statute since the decision in *Matter of Voorhees* (*supra*) has resulted in a change in the law affecting the question here involved, and it, therefore, becomes a matter of importance to consider the phraseology of the law as then in force. (Tax Law, § 220, as amd. by Laws of 1911, chap. 732.) This, so far as applicable, was as follows:

" A tax shall be and is hereby imposed upon the transfer of any tangible property within the state and of intangible property, or of any interest therein or income therefrom, in trust or otherwise, to persons or corporations in the following cases, subject to the exemptions and limitations hereinafter prescribed:

" 1. When the transfer is by will or by the intestate laws of this state of any intangible property, or of tangible property within the state, from any persons dying seized or possessed thereof while a resident of the state * * *.

" 4. When the transfer is of intangible property, or of tangible property within the state, made by a resident * * * by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor or intended to take effect in possession or enjoyment at or after such death."

A comparison of these two enactments demonstrates that the only changes made in the wording are, *first*, that in the preliminary clause the items of property upon which the tax is imposed are changed from tangible and intangible property, as it stood in the former statute, to real and personal property, as it is to-day; and, *second*, by the addition of certain clauses relating to change of use and enjoyment by reason of a reserved power in the grantor.

Except as to these two points, the decision of the Appellate Division is unquestionably binding upon this court and would result in a determination adverse to the contention of the appellant.

We will, therefore, consider the effect to be given to the alterations in wording noted.

No sound distinction can be drawn between the phrases " tangible and intangible property " and " real and personal property." If anything, the latter phrase, as limited by the definition of personal property contained in section 2, subsection 8, of the statute (as amd. by Laws of 1916, chap. 323), is less certain of inclusion of life insurance policies than was the former. The only item of the limiting enumeration of this definition which might include them is " things in action," and it may well be questioned as a matter of first impression as to whether the peculiar rights created by a policy of life insurance during the life of the insured are in any proper sense choses in action, which term is commonly used in contradistinction to a chose or thing in possession and is employed when the title to the money or property is in one person and the right to possession is in another. (*Higbee* v. *State*, 74 Neb. 331; 104 N. W. 748, 749; Bouvier Law Dict. 322; compare *Aikman* v. *Harsell*, 98 N. Y. 186; *MacDonnell* v. *Buffalo L., T. & S. D. Co.*, 193 id. 92, 103; *Streever* v. *Birch*, 62 Hun, 298, 302; *People* v. *Tioga Common Pleas*, 19 Wend. 73, 75.)

The entire subject of insurance is *sui generis* and occupies a somewhat anomalous position in the law. In ultimate essence a contract of insurance is a gambling transaction by which the insured, in so-called straight life insurance, wagers the substantially free use of the annual payments or installments of a certain principal sum against the such total sum, payable to a designated third party, that he will die before he has paid enough of such installments to equal the principal sum. Such contracts have, from the time of the statute 14 George III, chapter 48, been upheld on grounds of public policy, since in the vast majority of cases they are made for the benefit of dependents of the assured and thus tend to forestall the possibility of such dependents becoming public charges, as might otherwise be the case. It may, therefore, be said that such transactions are, in a very real sense, charged with a public interest, which has, no doubt, been an extremely potent underlying influence in inducing courts and Legislatures to continue the favored position which life insurance policies for specified beneficiaries have continuously occupied.

The limit of the reason for such popular approval has coincided with the limitation of their exemption from taxation, and consequently where the insured has made the policy payable to his executors and administrators without qualification, thus in effect dedicating the proceeds primarily to the payment of his creditors, they have been held subject to transfer tax, as we have seen. It is believed, however, that the fundamental reason for taxability in such cases is the fact that the proceeds of the transaction are beyond the protecting shield of public policy and not, as stated in

certain cases, because they pass under the will or the intestate laws of the State, since the latter is not the case in any true sense. The right to receive the money on the insurance in any such case does not pass by will or intestate laws. The right accrues to individuals who answer a certain description specified in the contract, but it is not a right which the decedent ever possessed and it is fundamental that *non dat qui non habet*. The correctness of this view seems amply supported by the result in the *Van Dermoor Case (supra)*, in which proceeds of a policy were held not taxable where they were made payable " to the said assured, his executors, administrators or assigns * * * *for the benefit of his widow*, if any."

On this theory it must follow that, in any case, the primary test of taxability of proceeds will be whether they are dedicated to the use of individuals toward whom the insured owed some especial duty, and if this requirement be satisfied the courts will, so far as possible, give effect to the dictates of this fundamental public policy and will not seek to draw nice distinctions as to the extent of the assured's moral or legal obligations to those ultimately benefited nor as to the conduit through which such benefit is to pass.

The foregoing is not intended to convey the impression that it is beyond the power of the Legislature to effect a change in the law so as to make taxable the proceeds of insurance policies payable to specified beneficiaries. It is, however, the opinion of this court that in view of the long-established public policy connected with such matters, no presumption exists that the Legislature intends to disturb this well-settled law and policy, and any change in enactment must be quite clear and explicit to be construed as effecting such a result.

As noted, the first change in the phraseology of the statute is not such as to vary the result reached in *Matter of Voorhees (supra)*, and there remains for consideration the effect of the addition to the subparagraph which was numbered " 4 " in the law existing at the time of that decision.

This addition was by the phrase " or where any change in the use or enjoyment of property included in such transfer, or the income thereof, may occur in the lifetime of the grantor " by reason of any reserved power, etc., " to alter * * * any transfer * * * as to the portion remaining at the time of the death of the grantor * * *."

This phraseology could only by a strained and unnatural construction be made applicable to life insurance policies payable after the death of the grantor. The reference to the " portion remaining at the time of the death of the grantor " indicates that it is intended

to apply only to cases in which a portion of the trust *res* is employed during the life of the grantor, *i. e.*, where a trust consists of two divisible parts, that employed or consumed during his life, and that which will be employed or consumed after his death. Where the trust *res* and the provisions of the agreement are of such a nature, any alteration of the terms of the instrument affecting the use of the property after the death of the settlor or donor is a testamentary act the results of which are properly subject to the taxing power of the State in return for the privilege of permitting testamentary devolution of property.

In the case of life insurance the theory upon which any such tax must be based utterly fails. The insured possesses no right which he can ever enforce. Nothing will ever pass to him or any one else by reason of the privilege conditionally granted by the State to dispose of property by testamentary act for the simple reason that he never has any property right to pass. The claim to the insurance money accrues to the named designee, not by reason of any special privilege granted by the State, but in consequence of the happening of an independent event, namely, the death of the insured, and the fact that in the ordinary course of mundane affairs that event is bound to happen in no way alters the nature of the transaction.

If the act of a man in insuring his life for the benefit of his dependents is consonant with the dictates of public policy it is most obvious that any arrangement which tends to add to the value of his act should be entitled to even greater public favor. Possibly the greatest defect of the old-time life insurance was found to be the fact that when considerable lump sums came into the hands of dependents their business inexperience frequently resulted in the early dissipation of the proceeds of the foresight and self-sacrifices of the assured. The first step toward remedy of this evil was the practice, which still largely prevails, of permitting the insured to specify that the principal sum should be paid in designated installments. More recently many have felt that they could obtain a larger return and greater flexibility in caring for a number of dependents by depositing the policies under an insurance trust, as in the instant case.

It is the contention of the appellant that were the policies payable either in a lump sum or in installments to the beneficiaries, they would not be taxable, but that the additional, possibly more beneficial, step makes them subject to the tax.

With this contention this court cannot agree. Under such a trust arrangement the trust beneficiaries are as truly the equitable owners of the proceeds as if they had been named as beneficiaries

therein. The trustee has a mere legal title, and in equity the substance rather than the form of the transaction is of transcendent importance. Any extension such as is here contended for by the appellant would of necessity have to be reached by implication from the altered terms of the statute. No such implication arises from the words used; in fact, the presumption is the reverse, both for the reasons stated and because the Legislature when it desired to impose a tax upon the proceeds of life insurance policies in section 249-b, paragraph (g), of the Tax Law (added by Laws of 1925, chap. 320, as amd. by Laws of 1926, chap. 365) used unmistakable language to evince such intention.

The objection of the appellant that the trust agreement was made in contemplation of death is ably and amply disposed of in the opinion of *Matter of Voorhees* (*supra*), in which the court says (at p. 263):

" The insured did not assign the policies in contemplation of death in any sense other than in the recognition that at some time he must die, or than any person contemplates when he procures a policy payable after his death; nor, within the meaning of the statute, did he perform these acts in the transfer of property to take effect at or after death only. A man who changes the name of a beneficiary in a life insurance policy, issued on his life and payable after his death, does not in the meaning of the statute make a transfer of property to take effect at or after death.

\*       \*       \*       \*       \*       \*       \*

" The appellants claim that this disposition of the policies and their proceeds is testamentary in character and the power of revocation suspended the completion of the transfer of the policies until the power could not be exercised because of death. The court, in determining whether there is here a transfer taxable under the statute, looks at the nature and essence and effect of the transfer. (*Matter of Orvis*, 223 N. Y. 1.) Generally a life insurance policy is not property acquired for the benefit of the owner; it is not an investment, or part of his estate; it returns him no income; nor generally is it an instrument for his present or future use, but rather a contract to secure payment of a sum after his death to another, the beneficiary named therein. The intent of the assured with respect to these policies seems plain; he acquired the several policies and assigned them to provide a trust fund for the benefit of his wife, his son and others after his death; and by the trust deeds he directed how, under what conditions, when and to whom payments therefrom should be made after this death. By his plan he was not distributing after death property valuable to him or his estate    \*    \*    \*.    He has indeed by his trust deeds

directed how the proceeds of these policies shall be distributed after death, and named the conditions under which the beneficiaries should take. But this is the effect in principle of every life policy payable at death to another than the assured or his estate. Considering the nature of the property, we do not consider that the plan of the assured should be held to be of a testamentary character. The reserved right of revocation, standing alone, is in substance the right to name a new beneficiary, which is the right which exists generally under life insurance policies. * * * That he has availed himself of the assignments and a trust deed to dispose of these proceeds no more indicates an intent to defeat the Transfer Tax Law than does the procuring of a life policy payable to another than himself or his estate."

The opinion of the New Jersey Supreme Court in the case of *Fagan* v. *Bugbee* (*supra*) has been carefully considered. As quoted in that opinion, the New Jersey statute construed is materially different from the present section 220 of the New York Tax Law but corresponds almost word for word with that section as it existed at the time of the decision of *Matter of Voorhees* (*supra*). This case, therefore, presents no authority contrary to the views herein expressed for the reasons, *first*, that the New Jersey statute materially differs from the applicable statute of this State, and, *second*, that if the New York statute were the same as the New Jersey statute therein construed, *Matter of Voorhees* is a direct, four-square authority binding upon this court, that the result reached in the *Fagan* case is not the law of this State.

The appeal of the State Tax Commission is, therefore, dismissed.

Submit decision and decree on notice in accordance with this opinion.