TOOTLE-LACY NATIONAL BANK, Executor and Trustee of the Estate of EDWARD W. ROLLIER, v. EDWARD FRANKLIN ROLLIER ET AL., MARY E. SCHELHAMER, Appellant.—111 S. W. (2d) 12.

Division One, December 14, 1937.

*John D. McNeely, James F. Selby* and *Fred M. Wanger* for appellant.

*W. M. Morton* for respondent.

W. J. *Boyd* for Jimmie Lowe, guardian of Emma E. Rollier, insane; *Elliott & Crouse* for Edward F. Rollier.

FERGUSON, C.—This is a suit in equity brought by the plaintiff Tootle-Lacy National Bank of St. Joseph in a fiduciary capacity. One Edward W. Rollier and his wife Emma E. Rollier were residents of St. Joseph. Rollier carried eight policies of life insurance, of an aggregate face amount of $10,000, in which his wife Emma E. Rollier was designated as the sole and unconditional beneficiary. In each of said policies the right of the insured to change the beneficiary was reserved. In March, 1930, the wife was adjudged of unsound mind and committed to a hospital for the insane where she has since continuously remained as an inmate. "The doctors say there is no probability that Mrs. Rollier will recover." At that time the Rolliers had been married for more than 20 years. No children were born of the marriage but Edward W. Rollier had one child, a son, Franklin Rollier, born of a previous marriage which had terminated in a divorce. After the divorce the son had not made his home with his father, but "when he was small his home was with his mother and grandfather in Rock Island, Illinois." Shortly after his wife was committed to a hospital for the insane Rollier made a change of beneficiary in all of his policies of life insurance specifying in the form, hereinafter set out, that the proceeds thereof should be paid to plaintiff, Tootle-Lacy National Bank, as trustee. The endorsements making a change of beneficiary did not specifically designate the beneficiary of the trust or declare the terms and conditions thereof. On June 21, 1934, Rollier executed a will. Having first directed payment of debts and funeral expenses he made one bequest, that of $6000 to Mary E. Schelhamer "together with all" of his "jewelry and personal effects," adding; "This bequest is made to compensate the said Mary E. Schelhamer for services rendered to me and my family." The residuary estate is then put in trust for "the use and benefit of my wife, Emma E. Rollier," the "income therefrom, or in case of necessity, any part of the principal thereof" to be used by the trustee "for the proper maintenance and support of my said wife, Emma E. Rollier, so long as she may live" and upon her death the trust to "cease and determine and said trustee after the payment of the funeral expenses of my said wife shall pay over and deliver to my son, Edward Franklin Rollier" the property remaining "to

be his property absolutely." The Tootle-Lacy National Bank is named as trustee of this testamentary trust and is also made executor of the will. Edward W. Rollier died September 17, 1934, and the will of June 21, 1934, supra, was admitted to probate as his last will and testament. The Tootle-Lacy National Bank qualified as executor. The record herein does not disclose what money or property Rollier possessed at the time that he made the will or whether in the interim between the date of the execution of the will and the date of his death he conveyed or transferred any property to Mary E. Schelhamer, the beneficiary of the sole legacy or bequest made, or any other person, but it does appear that after payment of the funeral expenses and costs of administration but little will be left in the hands of the executor and the net estate wholly insufficient to pay the $6000 bequest to Mary E. Schelhamer. The Tootle-Lacy National Bank, as trustee, the payeé and beneficiary designated in the insurance policies, collected the proceeds thereof, aggregating $10,258.10. As noted the Tootle-Lacy National Bank (hereafter referred to merely as the bank) was designated as trustee-beneficiary in the insurance policies, as trustee in the trust created by the will covering the residuary estate, and as executor of the will.

Mary E. Schelhamer's position is that the endorsements on the insurance policies, whereby the bank was made trustee-beneficiary, "created no trust for any object or in favor of any beneficiary and wholly fail as beneficial trusts," and that having "failed to create an effectual and enforcible express trust" a resulting trust in the proceeds of the life insurance policies arose in favor of the donor and "hence his legal representative," that is, a trust resulted to the bank as executor and the proceeds of the life insurance policies became assets of the estate and should be administered upon by the bank as such in its capacity as executor and applied first to the payment of the $6000 bequest to her. The bank then brought this suit by a bill in equity making Edward Franklin Rollier, Mary E. Schelhamer, and Jimmie E. Lowe, Guardian for Emma E. Rollier, Insane, defendants. Having fully set out in its bill, the facts of the situation, and the claim made by defendant Mary E. Schelhamer that the proceeds of the policies should be treated as assets of the estate, the bank states that "by reason of the facts and things hereinabove set forth plaintiff has a reasonable doubt as to the proper disposition of the funds (derived from the insurance policies) in its hands as trustee . . . and is therefore making application to this court (Circuit Court of Buchanan County) for directions and instructions in the administration" thereof, and concludes with a prayer that the court determine "the right, title and interest of plaintiff in its capacity as trustee and in its capacity as executor . . . and of all other parties to this action in and to" said funds. The

bank took the position that the wording of the beneficiary provisions endorsed on the insurance policies, which we presently set out, was not only such as to manifest a dominating intention to create a trust of some sort in the proceeds of the policies but also, by explicit reference to a trust to be created in the will, and the surrounding circumstances, to sufficiently make out an express trust as to the proceeds of the policies for the same term, upon the same conditions and with the same beneficiary, as that created by the will. The defendants, Edward Franklin Rollier, the son, and the guardian of the insane wife, by separate answers, and in the trial of the cause, joined in this contention. The trial chancellor found accordingly and entered a judgment and decree that Edward W. Rollier, by virtue of the beneficiary provisions of the life insurance policies and the trust provision in the will appointed the bank beneficiary to receive the proceeds of the policies upon his death, in trust, and as such trustee, to invest same and pay the net income thereof, or if need be part of. the principal, for the maintenance and support of his widow, Emma E. Rollier, during her life, and that upon her death said trust shall terminate and said trustee shall pay her funeral expenses and turn over to Rollier's son the remaining property, if any, of the trust estate; that said funds do not constitute any part of the estate of deceased and should not be inventoried as such; and that defendant Mary E. Schelhamer be precluded from asserting or claiming any interest therein. Defendant Schelhamer appealed from the judgment. In prosecuting this appeal she is seeking to reverse the decree and judgment of the trial court and have a decree in her favor declaring the proceeds of the insurance policies to be assets of the estate of Edward W. Rollier, deceased, so that thereby she may obtain payment of the $6000 bequest.

Looking again to the situation existing at the time Rollier made the change of beneficiary making the bank trustee-beneficiary in all his life insurance policies it will be recalled that his wife was originally named as the sole and unconditional beneficiary in each of these policies and it is manifest that, his purpose was to provide this protection for her in the event of his prior death; and that, when the wife was adjudged insane (appellant says she was "permanently insane") and it became necessary to place her in the care of a hospital for the insane, Rollier, very shortly thereafter, caused the change of beneficiary to be made, not however making the policies directly payable, on his death, to his personal representative or his estate, but to the bank as trustee if his wife survived him. Thus the immediate and surrounding circumstances considered it is clearly apparent, that it was the permanent incapacity of the wife to receive and invest the proceeds of these policies that prompted or caused Rollier to make the endorsements in question changing the

beneficiary in his life insurance policies, that he did not intend or desire, should his wife survive him, that any part of the proceeds of the policies should go to or become a part of his estate, and that he was attempting to create a trust therein in her favor in order to conserve and appropriate these proceeds for her use, benefit and maintenance during her life. Did he sufficiently create or declare such trust? Appellant says that while the legal title to these funds was vested in the bank by the endorsements and Rollier unquestionably desired to create an express trust in the proceeds of these policies and named plaintiff bank as trustee of such intended trust that because the change of beneficiary endorsements themselves did not include and specifically set out the term, object or purpose, and beneficiary of such trust, the attempted express trust fails for uncertainty and indefiniteness, and a resulting trust arises in favor of the bank as executor making the funds assets of the estate.

There were three Penn Mutual Life Insurance Company policies, two in the face amount of $1000 each and one in the face amount of $2000, and five Mutual Life Insurance Company of New York policies, four being in the face amount $1000 each and one for $2000. The change of beneficiary provisions covering the Penn policies and those of the Mutual Life policies differ in form and wording, though not in intent, and we therefore examine them separately.

The provisions covering change of beneficiary as to the three Penn Mutual policies are as follows:

''(1)  If said policies mature as a death claim, the combined net proceeds hereinafter termed 'net proceeds') shall be retained under the Interest Option until the termination of a period of thirty (30) days from said maturity and upon the expiration of said thirty (30) day period, the net proceeds with accrued interest shall be paid as follows:

''If the Company prior to the termination of said thirty (30) day period shall be furnished with an affidavit from the Tootle-Lacy National Bank of St. Joseph, Missouri, to the effect that my wife, Emma E. Rollier, is living and that I, the said insured, died testate, and that there is a trust operating under my will and that said will has been admitted to probate, the net proceeds shall be paid to the said Tootle-Lacy National Bank, or its successors as trustee. If the company prior to the termination of said thirty (30) day period has not been furnished with an affidavit as above provided, the net proceeds with accrued interest upon the termination of said thirty (30) day period, shall be paid to my executors, administrators or assigns.

''The right to change the beneficiary is reserved to me, the insured.''

As pointed out, sometime after making the change in beneficiaries Rollier executed a will which upon his death was admitted to probate.

And, as also heretofore noted, this will contained four paragraphs; (1) directing the payment of debts, etc.; (2) bequeathing $6000 to Mary E. Schelham; (3) creating a trust as to the residuary estate for the use and benefit of the insane wife, and directing the application of income therefrom, or the principal thereof, if necessary, to her maintenance and support during her life, and upon her death the trust to terminate and the remainder of the property to go to testator's son, and naming the plaintiff bank as trustee; (4) appointing the bank as executor of the will. The Penn Mutual endoresments, supra, provide that the proceeds of those policies shall be paid to the bank as trustee upon showing within the time limited; (1) that Rollier died testate; (2) that his wife Emma E. Rollier survived him and is living; (3) that there was a trust operating under his will; and (4) that the will has been admitted to probate; otherwise such proceeds to be paid to his personal representative and become assets of his estate. All of these contingencies occurred making effective the provisions for the payment of the proceeds of the policies to the bank as trustee. Only one trust is created by the will. True the trust which the bank, the guardian and the son seek to establish, and maintain was sufficiently created, as an express trust in the proceeds of these policies (so decreed by the trial court) and the testamentary trust covering the residuary estate are two separate and distinct trusts. While the subject matter of the two trusts is different, one being the proceeds of the Penn Mutual Insurance policies, the other, the residuary estate, the trustee is the same, that is the bank is designated as trustee in each. Respondents say that by virtue of the language of the endorsements and the designation therein of the bank as trustee-beneficiary the insured directed such trustee to the testamentary trust, if any, created, or to be created by his last will, as defining the powers of the trustee in the administration of the proceeds of these policies, the identity of the beneficiary and the term and conditions of the trust, clearly intending to prescribe a like trust as to the insurance funds. Considered with the other conditions of the endorsements can the reference to "a trust operating under my will" be disregarded and said to have no meaning whatever when the trustee named as the payee or beneficiary of the policies is also the trustee of the trust created under the will and, under the existing circumstances, can any other effect reasonably be given to the language used than that Rollier thereby intended that the proceeds of the policies should be paid to the bank as trustee under a trust of the same nature, character, and conditions and for the same beneficiary as the trust created by and "operating under" his will?

█ No particular, formal or technical words are required in the creation or declaration of an express trust and the declaration of

such trust need "not be contained in or endorsed on the instrument which transfers the legal title. It may be set out in one or several instruments executed at other times than that of the transfer of title, provided, when construed together," they show the existence of the trust. [Smith v. Hainline (Mo.), 253 S. W. 1049; 65 C. J., p. 262, p. 275; Adamson v. Black Rock Power & Irrigation Co., 297 Fed. 905; Kendrick v. Ray, 173 Mass. 305, 53 N. E. 823.] ■ In Platt v. Huegel, 326 Mo. 776, 782, 32 S. W. (2d) 605, 606, this court (referring to a trust in personalty) said: "An express trust may be proved not only by express declarations, but also by circumstances from which its existence may be inferred, and to this end evidence of the acts and declarations, either oral or written, of the parties, as well as the surrounding circumstances, may be admitted and considered." Trusts may be recognized and enforced as express trusts which have not been "directly and expressly declared . . . but which are inferred by a construction of all the terms and dispositions." In such cases "the court infers that it was the intention of the party to create an express trust . . . although he has not expressed that intention in unequivocal and direct terms, and the court is forced to gather it from his general expressions, or from the objects and purposes of his gift. When such a trust is found by the court to have been intended by the party, it is in every respect an express active trust. It is an express trust which the donor did not unmistakably declare, but which the court has helped out by interpretation and inference." [Pomeroy's Equity Jurisprudence (4 Ed.), sec. 1010.]

■ Attending the Penn Mutual endorsements, the intention to create a trust in the proceeds of the policies with the bank as trustee, is manifest, it was unquestionably the intention on the part of Rollier, in making the change of beneficiary, that, if his wife survived him, these funds should not go into his estate but to the bank as trustee to be used for the benefit and support of his wife, during her life. The only reasonable inference that arises from the explicit reference to the trust created in the will, and the connection in which it is made, in the light of the surrounding circumstances, is, that Rollier intended to adopt and make the terms and conditions and beneficiary of the testamentary trust applicable to the trust in the proceeds of the insurance policies and when the endorsements and that provision of the will are interpreted and construed together an express trust in the proceeds of these policies, as claimed by respondents and found by the trial chancellor, must be held to have been made out.

Many of the observations we have made in reference to the creation of an express trust in the proceeds of the Penn Mutual policies and the legal principles announced, supra, apply equally to the ex-

press trust which respondents claim, and the trial court found, was created in the proceeds of the five Mutual Life Insurance Company of New York policies. The change of beneficiary endorsements made on these policies follows:

"Beneficiary is changed as follows: 'If Emma E. Rollier, wife of the Insured, shall survive the Insured, the proceeds of this policy shall be payable to the Trustees under the last will and testament of the Insured, but if by reason of the intestacy of the Insured, or the fact that he shall leave a will creating no trust covering this policy, said trustee or his successor Trustee, shall not be acting and qualified to receive payment thereof, to Insured's executors and administrators or assigns; if the said wife of the Insured shall not survive him, to the Insured's executors, administrators or assigns.'

"All rights reserved to the Insured."

It is apparent that, as under the Penn Mutual policies, Rollier, the insured, intended to create a trust in the proceeds of these policies provided certain contingencies occurred. Such trust was to come into existence unless; (1) Emma E. Rollier, the wife of the insured, should not survive him; or (2) no trust was created by will in which event there would be no trustee "under the last will and testament" of the insured to receive payment of the proceeds. If either contingency occurred the proceeds were payable to insured's personal representative and became a part of the estate. Emma E. Rollier did survive her husband which disposes of the first contingency. The insured did not die intestate and in order that the proceeds of these policies be not payable to the trustee of the trust created in the will to hold in trust under the same conditions and terms for the support of the insane wife as set forth in the testamentary trust, the court must hold that the will created "no trust covering," or applicable in its terms, to these policies.

It is clear in the light of his subsequent acts that Rollier did not intend that the proceeds of these policies should pass under his will as part of his estate if his wife survived him. Had he so intended would he not have made them payable directly to his personal representative or his estate? The policies were payable "to the trustee under the last will and testament of the insured." The plaintiff was made trustee in the trust created by the will and therefore the policies were payable to it as trustee. Guided by a reasonable construction and interpretation of the language used, considered in the light of the surrounding facts and circumstances, heretofore mentioned, we think it a reasonable conclusion that Rollier intended that a trust of the same kind and character and on the same conditions as that declared in the will should apply to the proceeds of these policies. In other words, the trustee in the trust created in the will, to whom the proceeds of the policies are payable in trust, was vested by the

will with certain powers and responsibilities and when that provision of the will, to which reference is made, in general terms, in the en-dorsements, is read in connection with the endorsements, the terms of the trust therein created are, we think, sufficiently made to apply to and cover the policies, and the uses for which the trustee bank takes, holds and administers the proceeds of the policies payable to it in trust, and its duties and responsibilities as to such trust, are fixed and determined, as was done by the trial chancellor, by reference to the trust created by the will.

The judgment of the trial court should be affirmed. It is so ordered. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur, except *Hays, J.,* absent.