## Staunton

CHRISTINE MELVIN BICKERS v. SHENANDOAH VALLEY NATIONAL BANK OF WINCHESTER, EXECUTOR, ETC., ET AL.*

September 14, 1955.

Record No. 4356.

Present, All the Justices.

---

\* The reader is referred to explanatory opinion appearing *post* at page 732.

The opinion states the case.

*A. Garland Williams*, for the appellant.

*Harrison, Benham & Thoma* and *Wiltshire & McCaul*, for the appellees.

MILLER, J., delivered the opinion of the court.

The question presented in this case is whether or not an instrument purporting to be an *inter vivos* trust is valid.

On December 10, 1949, Myron B. Bickers entered into a written agreement with the Shenandoah Valley National Bank of Winchester wherein it was recited that policies of insurance upon Bickers' life, payable at death, have been made payable to and delivered to the bank as trustee. In the instrument the bank agreed to act as trustee. Eight insurance policies upon settlor's life (upon which $41,830.46 was realized at his death), made payable to "Shenandoah Valley National Bank of Winchester, Trustee," were in fact delivered to the trustee.

By an addendum of the same date made a part of the agreement, it was expressly provided that the trust was revocable by Bickers; that he had the right to withdraw any of the policies placed for safekeeping with the trustee, and that "the trustee's only rights in the trust and policies placed in safekeeping prior to the death of the Settlor are to hold the policies in safekeeping until and unless they are withdrawn by the Settlor."

Had Bickers died at the time the instrument was executed, his heirs and distributees would have been Constance Melvin Bickers,

his wife, and Frances Yager Pinnell, Betty Bray Bickers, Jane Stuart Bickers and Barbara Rae Bickers, daughters by a former marriage.

In the writing it was provided that upon the settlor's death the trustee should receive all sums payable upon the policies and administer the fund as follows: In the event the widow of the settlor survived him and elected to "reject the provisions made for her in the will of the Settlor and shall elect to claim her marital rights" in his estate, the insurance funds were to be divided into four equal parts. One part was to be paid to each of his two adult daughters, *i.e.*, Frances Y. Pinnell and Betty Bray Bickers, and the other two parts were to be paid to the "Shenandoah Valley National Bank of Winchester, Virginia, as trustee under the will of the Settlor" for his infant daughters, Jane Stuart Bickers and Barbara Rae Bickers. On the other hand, if settlor's widow elected "to take under the will," the trustee was directed to divide the insurance proceeds into five equal parts. One part was to be paid to the widow, one part paid to each adult daughter, and the shares of the two infant daughters were to be paid to the Shenandoah Valley National Bank of Winchester as trustee under the will of the settlor for the benefit of the two infants. After expressly directing that the shares of the two infants be paid to the will trustee, the trust instrument nevertheless undertook to direct for what period of time and how the will trustee should hold and administer those shares and what disposition it should make of those funds in case of the death of either or both beneficiaries. No provision whatever was made for administering or disposing of the funds to be derived from the insurance policies if Bickers died without a will. In case of his intestacy there was no designated beneficiary, and the alleged trust was wholly inoperative.

On the same date, December 10, 1949, Bickers executed his will. In it two specific bequests, *i.e.*, a piano and $10,000, were made to his daughter, Barbara Rae Bickers, and all of his tangible personal property not used in his business was bequeathed in equal shares to his wife and four daughters. The will then directed that the residue of his property, real and personal, (which amounted to some $153,000, of which about $50,000 was personalty and about $103,-000 realty), be divided by his executor into five equal parts. One part of this residue was left to his wife "in lieu of her dower and marital claims upon my estate;" one part to each of his two adult daughters, and the other two parts to the Shenandoah Valley National Bank of Winchester as trustee for his two infant daughters.

By an additional writing of May 15, 1952, executed as an amendment to the trust agreement of December 10, 1949, the clause providing for the administration of Jane's share by the trustee was slightly changed and clarified, and by codicil of May 15, 1952, the corresponding paragraph in Bickers' will providing for the administration of Jane's share by the trustee was likewise changed and clarified.

When Bickers died on June 15, 1952, the trust agreement had not been revoked and the insurance policies remained unchanged in the trustee's possession.

Had he died intestate, his widow would have been entitled to one-third of his personal estate after payment of debts, § 64-11, Code of 1950, and dower in his real estate as allowed by § 64-27, Code of 1950. However, as he died testate, she was entitled to renounce the provision made for her in his will. Section 64-13, Code of 1950. Under the provisions of § 64-16, she would, upon renunciation, be entitled to one-third of the surplus of decedent's personal estate and dower as allowed by § 64-27.

After the death of Myron Bickers, his widow, being dissatisfied with the provisions made for her in the will and trust, filed her bill against the bank as executor of Bickers' will and as trustee under the insurance agreement. She also named Bickers' four daughters as parties defendants. She asserted that the agreement was a mere will in disguise and ineffectual as an *inter vivos* trust, and prayed that it be declared invalid; that the proceeds of the policies be paid to the executor of decedent's estate for distribution and that she be granted additional time within which to determine whether or not she would renounce the provisions made for her in the will.

Respondents demurred and asserted that the bill failed to allege grounds for equitable jurisdiction; that the corpus in the trust agreement constituted no part of decedent's estate, and that the agreement constituted a valid *inter vivos* trust and the proceeds from the policies should be administered by the trustee under the terms of the trust.

By decree of April 26, 1954, the court sustained the demurrers except insofar as they related to an order entered on June 20, 1953, extending the time within which the widow might renounce the provisions made for her in the will, and to that extent the demurrers were overruled. Section 64-14, Code of 1950.

The effect of that decree was to hold that the writing constituted

a valid *inter vivos* trust. From the decree the widow appealed.

In her brief appellant states that the only issue presented is whether the trust agreement of December 10, 1949, is testamentary in character and therefore of no effect because of its failure to comply with the statute of wills.

Appellant does not contend that life insurance policies in which provision is made for change of beneficiaries may not be made the subject matter of an *inter vivos* trust. There is high authority for the proposition that they may be.

In Scott on *Trusts*, § 57.3, it is said:

"Where a person takes out a policy of insurance upon his life payable to a third person as trustee, and reserves the power to change the beneficiary of the policy, and perhaps in addition the power to change the beneficiaries of the trust, the question arises whether the disposition is testamentary and invalid for failure to comply with the requirements of the Statute of Wills. It is arguable that the trust does not arise until his death, and that since his death is a condition precedent to the creation of the trust, the disposition is testamentary. The answer is, however, that the beneficiary of the policy as soon as he is named trustee holds his rights as beneficiary of the policy in trust. The mere fact that those rights can be terminated at any time by the insured, and that the rights of the beneficiaries of the trust are enjoyable only after the death of the insured, and that the trustee has no active duties until the death of the insured, *does not prevent a trust from arising immediately.* * * * It is true that until the death of the insured it is a pretty thin trust, and it would not be difficult to hold that the disposition is testamentary. The difficulty in upholding the trust, however, seems to be no greater than in upholding the rights of the beneficiary of an insurance policy where no trust is involved but where the insured reserves power to change the beneficiary. A policy of life insurance where the insured has reserved the right to change the beneficiary is in a sense testamentary in character, but the courts have never had any difficulty in permitting the beneficiary to recover the proceeds on the death of the insured if he had not in fact revoked the policy. It would seem that the fact that the policy is payable to a beneficiary as trustee for others makes it no more testamentary than if it were payable to the beneficiary absolutely.

"Moreover, the fact that the insured may have reserved power not only to change the beneficiary of the policy but also to change

the beneficiaries of the trust or otherwise to modify the terms of the trust, would seem to make the disposition no more testamentary. The danger of fraud which lurks in ordinary unattested testamentary dispositions is not serious in these cases. The courts have therefore had no difficulty in upholding insurance trusts, although they are not executed with the formalities necessary for a will."

Of like effect are Smith, *Personal Life Insurance Trusts* (1950), § 17, p. 74; Restatement of Trusts, § 57, comment (f); 27 Rocky Mountain Law Rev. 240.

■ Nor does appellant rely chiefly upon a contention that the agreement is invalid because revocable at will. This point we do not now decide though the invalidity of an instrument of this character, because of its revocability, is strongly intimated in *Gentry v. Bailey*, 6 Gratt. (47 Va.) 594, 603, where it is said:

"This right, by our law, on the part of the wife, I think is clear the husband cannot defeat by any contrivance for that purpose: He cannot, by any device, die testate or intestate in regard to his personal estate, in such wise as to bar her distributive share. Whatever may be the form of the transaction, if the substance of it be a testamentary disposition by the husband of his property, it cannot be effectual in relation to the wife. If this were otherwise, the statute might be rendered a dead letter at the volition of the husband.

"It follows, that where a husband by a voluntary deed of gift of personals, in whatever form made, retains to himself the possession and enjoyment of the property during his life, and making the gift effectual only from the time of his death, reserves on his own part an absolute and complete power of revoking the same; such an instrument, so far as regards the distributive share of the wife, is in its nature testamentary only, and cannot affect the rights conferred upon her by law in contemplation of his dying either testate or intestate." Cited with approval in *Hall* v. *Hall*, 109 Va. 117, 63 S. E. 420. See also 1 Scott on *Trusts*, § 57.5, p. 350, and 64 A.L.R. 472, 473.

■ Appellant attacks the instrument on the ground that it is testamentary in character because Bickers had no intent to create an *inter vivos* trust and in the instrument conveyed no estate, vested or contingent, prior to his death.

It is argued that the agreement is wholly inoperative as a trust until Bickers' death, and was intended to be so by the maker, and to

be effectual even then is dependent upon his executing and leaving a will. Appellant contends that the actual effect of this alleged trust is merely to make the policies payable to a trustee *at* death and then dispose of the proceeds through testamentary acts and writings.

For a clear understanding of the interlocking and dependent provisions of the two instruments and how by their integration Bickers sought to retain control of the subject matter of the trust and never actually convey any interest in the policies to the trustee until his death and yet prevent the proceeds of the policies from passing as a part of his estate, the material parts of the two writings are set out below.[1]

---

[1] **TRUST AGREEMENT**

"1. That the Settlor has delivered to the Trustee certain policies of insurance, and may in the future deliver to the Trustee additional policies of insurance, all made payable to the Trustee upon the death of the Settlor.

\* \* \* \* \*

"3. That said Trustee shall hold said policies in safe-keeping until they shall have become payable, and thereupon shall receive any and all sums of money payable thereunder, and when so received shall hold and invest said sums of money as a trust fund.

"4. Said trust fund shall be held and distributed in the following manner and upon the following trusts and purposes:

"A. In the event that the widow of the Settlor shall survive him, and in the event that such widow shall reject the provisions made for her in the will of the Settlor and shall elect to claim her marital rights in the estate of the Settlor then, in that event, the Trustee shall *divided* the trust fund into four equal parts. The Trustee shall then give one of these four equal parts to Frances B. Pinnell, a daughter of the Settlor, one of the four equal parts to Betty Bray Bickers, another daughter of the Settlor, one of the four equal parts to the Shenandoah Valley National Bank of Winchester at Winchester, Virginia, as Trustee under the Will of the Settlor, for Jane Stuart Bickers, another daughter of the Settlor, and the final fourth equal part to the Shenandoah Valley National Bank of Winchester, at Winchester, Virginia, as Trustee under the Will of the Settlor, for Barbara Rae Bickers.

"(B). The Trusts hereby created for the benefit of the said Jane Stuart Bickers and Barbara Rae Bickers shall be held and distributed in the manner hereinafter provided.

"(C). In the event that the widow of the Settlor shall elect to take under the will of the Settlor, then, the Trustee shall divide the trust into five equal parts, and shall pay one of these five equal parts to the Settlor's widow, one of the five equal parts to Frances B. Pinnell, a daughter of the Settlor, one of the five equal parts to Betty Bray Bickers, another daughter of the Settlor, one of the five equal parts to the Shenandoah Valley National Bank of Winchester, at Winchester, Virginia, as Trustee under the Will of the Settlor, for the benefit of Jane Stuart Bickers, another daughter of the Settlor, and the last fifth equal part to the Shenandoah Valley National Bank of Winchester, at Winchester, Virginia, as Trustee under the Will of the Settlor for the benefit of Barbara Rae Bickers, another daughter of the Settlor."

Insured, having reserved the right to change the beneficiaries in the policies, certainly at all times before execution of the alleged trust agreement, was the full owner of the contracts of insurance; and the beneficiaries, whosoever they may have been, enjoyed a

(Here are set out the provisions upon which the trustee shall administer the share of Jane Stuart Bickers during her life, and the share of Barbara Rae Bickers until she attain the age of twenty-five, and also who shall receive any corpus of these shares upon the death of Jane or upon the death of Barbara before attaining twenty-five.)

## ADDENDUM

"As a part of the above trust agreement, it is understood and agreed between the parties that said trust is revokable at any time by the Settlor; and the Settlor shall have the right at any time to withdraw from the trustee any of the policies placed in safekeeping with the trustee under this agreement.

"This trust may be broken, or the policies removed as aforesaid, by the Settlor's presenting to the trustee a demand in writing for the withdrawal or the termination of the trust agreement, as the case may be.

"This addendum is made and executed at the same time with the main agreement and forms part of said agreement.

"The trustee's only rights in the trust and policies placed in safekeeping prior to the death of the Settlor, are to hold the policies in safekeeping until and unless they are withdrawn by the Settlor."

## THE WILL

By clauses Second and Fifth Barbara Rae Bickers is bequeathed testator's piano and $10,000. By clauses Third, Fifth and Sixth he disposes of all the balance of his estate as follows:

"Third: All of my personal belongings, furniture, household effect, including pictures, papers, china, glass, silver and other items of a similar nature, and all automobiles not used in my business, I give and bequeath to my wife, Christine Melvin Bickers, and my four children, Jane Stuart Bickers, Frances B. Pinnell, Betty Bray Bickers and Barbara Rae Bickers, equally, share and share alike, provided they survive me, otherwise to the survivors.   *   *   *

*       *       *       *       *

"Fifth: All the rest and residue of my estate, real and personal, now in possession or hereafter acquired, shall be divided by my executor into five equal parts   *   *   *.

"Sixth: My Executor shall then deliver one equal part or one-fifth of the net residue to each of the following:

"(1) To my wife, Christine Melvin Bickers, which gift to her shall be in lieu of her dower and marital claims upon my estate;

"(2) To my daughter, Frances B. Pinnell;

"(3) To my daughter, Betty Bray Bickers;

"(4) Of the remaining two shares or two-fifths, one-fifth shall be held by the Shenandoah Valley National Bank of Winchester, at Winchester, Virginia, as trustee for my daughter, Jane Stuart Bickers, and the other one-fifth as trustee for my daughter, Barbara Rae Bickers."

Here follow directions as to how the trustee shall administer the shares held for Jane and Barbara, which are practically identical to the provisions set out in the trust agreement.

mere expectancy in the policies. *Smith* v. *Coleman*, 184 Va. 259, 35 S. E. (2d) 107; *Gordon* v. *Portland Trust Bank*, 201 Or. 648, 271 P. (2d) 653.

The policies of insurance that insured had with the companies and his trust agreement with the bank are separate and distinct contracts. The contracts between the insured and the insurers are fulfilled upon payment by the companies of the proceeds of the policies to the named beneficiary. The alleged *inter vivos* trust agreement between the settlor and the trustee must be construed according to its intent, and as a trust agreement, and it must stand or fall by its own terms.

The true test to be applied to this instrument is: Did the settlor intend that upon its execution that a present interest or estate pass from him to the trustee in trust for named beneficiaries, or did he intend that the instrument have no effect until after his death?

Indeed, the test for determining whether a writing has effected a trust or is testamentary in character is whether the maker intended the instrument to have any effect until after his death, or whether he intended to transfer some present interest." *Allen* v. *Hendrick*, 104 Or. 202, 206 P. 733, 741.

Otherwise stated, did the settlor by this writing actually divest himself *in praesenti* of an interest in the subject matter or has he made only an illusory transfer during his lifetime?

■ The answer to this question is made plain by the settlor. In unequivocal language he said that no interest was to pass during his lifetime. In the addendum he expressly declared that during his lifetime the trustee's only rights in the trust and policies was to hold them in safekeeping. That clear and understandable language negatives the idea or intent to pass *eo instante* any interest, vested or contingent, in the subject matter then owned by the settlor. It makes the bank trustee a mere custodian of the policies during settlor's life and convincingly shows that its status as trustee and any rights and interests in the subject matter as trustee for the beneficiaries were to arise at and not until death.

A cursory inspection of the alleged trust and the will shows that Bickers undertook to execute a writing that would appear to be an *inter vivos* trust, but inoperative without a will and yet so integrated with the will then executed as to evade § 64-16, should his widow renounce. This he sought to accomplish by making the policies payable, not to ultimate beneficiaries which he could have

done, but to an intermediate trustee, who would not function as such unless he left a will. By this illusory instrument, which was inoperative during life, and, standing alone, actually conveyed nothing to the trustee *in praesenti*, he undertook to retain full ownership in the subject matter of the trust and by a testamentary act; *i.e.*, the execution and leaving of a will at his death, he sought to have the trust then become operative, and thus at death control the disposition of the trust estate. But this he could not legally do, for embellishment may not change actuality, nor can the repeated use of the words "settlor" and "trustee" alter the maker's true intent and make of a testamentary instrument an *inter vivos* trust.

In case of intestacy the proceeds of the policies must be paid to the trustee by the insurance companies under their contract with insured. But in that event the trustee will not hold the funds for administration under the trust, for that instrument does not contemplate a trusteeship in case of intestacy. Through operation of law and not by virtue of the agreement, a resulting trust in the funds would arise and the bank would be required to turn them over to the administrator.

It is significant that the agreement provides that upon Bickers' death, the trust trustee shall pay the shares of Jane Stuart Bickers and Barbara Rae Bickers to the will trustee. In the trust agreement the maker also undertakes to direct how the will trustee shall administer the shares of these two beneficiaries during the life of one of them and as to the other until she attain the age of twenty-five. The addendum further provides that the trustee's *"only rights* in the trust and policies placed in safekeeping prior to the death of the Settlor, are to hold the policies in safekeeping until and unless they are withdrawn by the Settlor." These provisions constitute clear and express disclaimers of any intent to create an *inter vivos* trust.

Whether or not there is infirmity in an instrument of this type as intimated in *Gentry* v. *Bailey, supra*, if challenged by the maker's widow on the ground of its *revocability*, we need not now decide. But aside from that question, had the writing by appropriate language evidenced *intent* to convey an estate or interest *in praesenti*, though distributable after death, to designated beneficiaries, *whether the maker died testate or intestate*, it would have been valid as an *inter vivos* trust. Then it would not have been testamentary in purpose, nor would it have been factually dependent upon a testamentary act as a condition precedent to its efficacy as this writing is.

The right of the widow to participate in the trust fund could then have been made dependent upon the *condition subsequent* of whether or not she renounced the provision made for her in the will. The existence of the will would have been a matter of independent significance for the intent to create a trust *in praesenti* would have existed and the trust would have been operative with or without the will. But dependent as this instrument was intended to be, and is, upon the existence of the will for any efficacy, it is impossible for the will to be a matter of independent significance. That is true simply because the trust agreement was never intended to and cannot stand alone.

Even though it be true that the trust created by the instrument is not made to depend upon the terms of the contemplated will, it is nevertheless dependent upon a will's existence. If the will were revoked, there would be no trust even at the maker's death. This shows that it was the maker's certain purpose that if the trust agreement were to function at all, it was to do so as a testamentary instrument.

Appellees rely upon the decision of *Russell's Ex'rs* v. *Passmore*, 127 Va. 475, 103 S. E. 652, and *Cohn* v. *Central National Bank*, 191 Va. 12, 60 S. E. (2d) 30. As bearing upon the question here presented, it is sufficient to say that those two cases are readily distinguishable because in each the instruments disclosed an intent to create a present trust; an interest was conveyed *in praesenti* to the trustee, and neither instrument was made dependent upon the existence of a will as a condition precedent to its efficacy.

Had this instrument been written in the handwriting of its maker and signed by him or otherwise executed with the formalities required of a will, it would have been capable of probate along with his will. That being true, its character as a testamentary instrument is established and it cannot operate as an *inter vivos* trust. It may not be both, an *inter vivos* trust and a will.

A revocable *inter vivos* trust is one that is valid and efficacious from its execution and delivery, and will, without further act of the settlor, accomplish its intended purpose unless revoked by the maker during his lifetime. But here we have a hybrid sort of *inter vivos* trust that is said to be effectual from execution, but by mere neglect or failure of the maker to leave a valid will at his death, it would never acquire any life. Yet if he left a will, this writing, though not executed with the formalities required of a will,

was meant to spring into life and function from and after death. This may not be accomplished, for an instrument that holds out a promise, but which actually conveys no interest itself to the intended beneficiary during the maker's life and is to speak and be operative upon his death, is testamentary and can have no validity unless executed in the manner required of a will. *Spinks* v. *Rice*, 187 Va. 730, 47 S. E. (2d) 424.

If this instrument, ineffectual as it is without the will, were held valid as an *inter vivos* trust, then there is nothing to prevent a married man at any time prior to death from executing a revocable writing, reserving to himself a life estate in all of his property but conveying the remainder in his estate to a trustee for designated parties other than his wife, *in case he leave a will* and then execute a will that merely appoints an executor, (57 Am. Jur., Wills, § 27, p. 55) and he will by such dependent writings, retain full control of and beneficial interest in his property until death, and at the same time successfully prevent his widow from sharing in his estate. That is what this instrument was intended to accomplish to an extent materially detrimental to the widow, and what it would accomplish if it were held valid. The insurance proceeds go to designated parties if Bickers leaves a will, with the widow's share only one-fifth, and nothing if she elect to renounce the will, and yet they pass to his estate if he does not leave a will.

The instrument is not invalid because the trust funds (proceeds of the policies) are not distributable until after the maker's death, and it could be conceded that it is not invalid upon challenge by the widow solely because it is revocable by the maker at pleasure. Yet when these two provisions are coupled with its intended and actual dependence upon the existence of a valid will at the maker's death as a condition precedent to its efficacy, it is made manifest that no interest was conveyed *inter vivos*, and the maker's purpose and intent was that it operate only as an ambulatory and dispository instrument and that it was in fact testamentary in character.

Standing *alone*, the writing is wholly illusory and without substance as an *inter vivos* trust. Its efficacy is made dependent upon the *condition precedent* that its maker execute *and leave a valid will at his death, which is an uncertain event within the maker's control.* In reality it is a testamentary disposition in disguise, and lacking the formalities of execution required of a will, it is inoperative.

█ Appellees assign cross-error and contend that the chancellor

should have sustained the demurrers in all respects and thus refused to extend the time in which appellant might renounce the will as authorized by § 64-14, Code of 1950. This section provides *inter alia:*

"If the will is of doubtful import as to the amount or value of the property the husband or wife of the testator is to receive thereunder and a suit in equity is pending wherein it will be construed in that respect, the court * * * shall, within the year, on the application of the surviving husband or wife, enter an order extending the time within which the survivor is to make renunciation for such additional period beyond the year as will allow the survivor reasonable time, not exceeding six months, for making the renunciation after a final order has been entered in the suit. * * *"

Upon application of the provisions of the foregoing section to the facts of this case as disclosed by the record, it was clearly the right and duty of the chancellor to extend the time within which the widow could make renunciation of the provisions made for her in her husband's will.

For the reasons stated the decree will be reversed and the cause remanded for such further proceedings as may be necessary and proper, and not in conflict with the views herein expressed.

*Reversed and remanded.*

EGGLESTON, BUCHANAN AND WHITTLE, JJ., dissenting.

WHITTLE, J., dissenting.

The decision of the majority places Virginia in a class by herself and overrides settled principles adhered to by our court in the past which are in accord with the overwhelming majority rule in this country.

Bickers' plan was to have his second wife share equally with his own children by a former marriage. Leaving out the specific devises, he provided in his will that his estate be divided into five equal parts; one part was devised to his wife "in lieu of her dower and marital claims upon my estate", and one part was devised to each of his four daughters.

The life insurance trust provided that if Mrs. Bickers survived her husband and renounced the will (which she had a legal right

to do) the proceeds of the insurance policies were to be divided equally among his four daughters. However, if Mrs. Bickers survived her husband and elected not to renounce the will, then in that event the proceeds from the insurance policies were to be divided into five equal parts, one part going to Mrs. Bickers and one part to each of the settlor's daughters.

It is conceded that "the sole issue in the case is whether the trust agreement dated December 10, 1949 is testamentary in character and therefore of no effect because of its failure to comply with the statute of wills". Appellant attacks the trust on *two* grounds rather than *one* as stated in the majority opinion. First, she asserts that the *powers reserved* by Bickers make the trust testamentary in character; and second, she contends that *no interest passed* under the trust agreement *prior to Bickers' death*. In either event, she argues that the proceeds from the policies of insurance should be declared a part of Bickers' estate which passes under his will.

At the outset it must be remembered that we are here dealing with a life insurance trust as distinguished from trusts involving other classes of property. *Norris* v. *Barbour*, 188 Va. 723, 51 S. E. (2d) 334.

It is conceded that Bickers could have taken out policies upon his life and named anyone he chose beneficiary therein to the complete exclusion of his wife. Unless such policies were payable to Bickers' estate the wife would have had no interest whatever therein. The situation here is simply that the insurance policies were made payable to a trustee, and the trust agreement was nothing more than the directions to the trustee as to how the proceeds of the policies should be handled on the death of the insured.

In considering the first assertion, that the powers reserved make the trust testamentary, the majority opinion quotes at length from Scott on Trusts, § 57.3. The quotation there relied upon can hardly give comfort in the result reached. There the learned author admits that it is arguable that the trust does not arise until the settlor's death, and that since his death is a condition precedent to the creation of the trust, the disposition is testamentary. He states, however, that the answer to this is that the beneficiary of the policy, as soon as he is named trustee, holds his rights in trust; that the mere fact that those rights *can be terminated by the insured* and that the rights of the beneficiaries of the trust are enjoyable only after the death of the insured, and further, that the

trustee has no active duties until the death of the insured *"does not prevent a trust from arising immediately"*.

The author further states "The difficulty in upholding the trust, however, seems to be no greater than in upholding the rights of the beneficiary in an insurance policy where no trust is involved but where the insured reserves the power to change the beneficiary"; that the fact that the policy is payable to the beneficiary as trustee for others makes it no more testamentary than if it were payable to the beneficiary absolutely. Moreover, says Scott, the reservation not only of the power to change the beneficiary of the policy, but also of the right to change the beneficiaries of the trust, or otherwise modify its terms, would seem to make the disposition no more testamentary. The author concludes: "The danger of fraud which lurks in ordinary unattested testamentary dispositions is not serious in these cases. The courts have therefore had no difficulty in upholding insurance trusts, although they are not executed with the formalities necessary for a will."

The last quoted sentence is in keeping with Judge Baldwin's statement in the case of *Gentry* v. *Bailey* (1850), 6 Gratt. (47 Va.) 594, 607, which case is relied upon in the majority opinion. There Judge Baldwin said: "The objections which have been urged against the validity of the gift in question founded upon a supposed disregard of the solemnities required by law in relation to the attestation and authentication of the instrument, are unwarranted, it seems to me by the true construction of our statute law upon the subject."

In Personal Life Insurance Trusts (Smith) (1950), § 17, at page 74, it is stated that the insurance contract itself savors of a testamentary disposition of accumulated wealth; that the death of the insured marks the beginning of the real enjoyment by the named beneficiary, and it is not always easy to distinguish between an interest created at or by the death of the donor and an interest created prior to but intended to take effect in possession or enjoyment at the death of the donor, and that cases are numerous challenging the validity of trusts in which the settlor reserved numerous powers. The author goes on to say that, although it is now well settled that the reservation of a life interest *or the reservation of a power to revoke*, or a combination thereof does not render a trust testamentary, they form a strong foundation for arguing that the settlor has parted with nothing during his lifetime and the pur-

ported disposition is therefore testamentary. But, he adds, *"The courts have, however, with almost complete uniformity, upheld the validity of the life insurance trust and have refused to heed the claims that a testamentary disposition is involved."* (Italics supplied)

As authority for his statement, the author cites twenty cases from various jurisdictions over the country generally. Among these are: *Jackman* v. *Equitable Life Assur. Soc. of U. S.*, (C. C. A. 3rd, 1944) 145 F. (2d) 945; *Lauterbach* v. *N. Y. Investment Co.*, 62 Misc. 561, 117 N. Y. S. 152, aff'd. *Minrath* v. *Gifford*, 137 App. Div. 919, 122 N. Y. S. 1137; *Gritz* v. *Gritz*, 336 Pa. 161, 7 A. (2d) 1.

The author continues: "The reservation of a power to revoke does not affect the result, *(Beirne* v. *Continental-Equitable Title & Trust Co.*, 307 Pa. 570, 161 A. 721; *In re Voorhees' Estate*, 200 App. Div. 259, 193 N. Y. S. 168)* nor does a power to alter the cestuis' interests, *(Beirne* v. *Continental-Equitable Title & Trust Co., supra)* or to change the beneficiary of the policy. *(Fidelity Trust Co.* v. *Union Nat'l Bank*, 313 Pa. 467, 169 A. 209, cert. den., 291 U. S. 680, 54 S. Ct. 530, 78 L. ed. 1068) * * * (E)ven though it is designed as a substitute for a testamentary disposition and the person named as trustee is also named executor of the settlor's will. *Fidelity & Columbia Trust Co.* v. *Glenn* (D. C., W. D. Ky. 1941), 39 F. Supp. 822, n.45; *Sacred Heart Church* v. *Fidelity Trust Co.*, 16 D. & C. 661 (Pa. 1932))."

Restatement of Trusts, § 57, comment (f) is in accord with the foregoing statement. There it is said:

"If a person takes out a policy of insurance upon his life payable to a third person as trustee, the intended trust is not testamentary although the insured person reserved power to change the beneficiary of the policy *and power to revoke or modify the trust.* In such case a *present trust is created*, the beneficiary of the policy holding his rights as beneficiary in trust. * * * This is true whether the beneficiary of the policy is designated in the policy as trustee, or whether the policy is payable to him without mention of any trust but he agrees with the insured to hold the policy or its proceeds in trust for a designated person. The result is the same where the policy is payable to the insured person or his estate and is transferred by him to another person as trustee. *The disposition is not invalid although the trustee has no active duties to perform until after the death of the insured."* (Italics supplied)

The majority opinion states that to hold this instrument valid would permit a husband to do his wife out of her interest in his property. The answer to this assertion is, as before indicated, a policy of insurance is not an asset of the estate of the insured and no interest of the widow arises unless the policy is made payable to her or the estate. The insured has complete freedom in all instances to exclude his wife from the benefit of insurance policies. A different rule applies to other property which the husband owns at his death. There the wife takes an interest by virtue of marriage which the husband cannot destroy without her consent by any sort of writing. *Norris* v. *Barbour, supra.*

In a leading case, *Gurnett* v. *Mutual Life Ins. Co.*, (1934), 356 Ill. 612, 191 N. E. 250, Ames and a trust company entered into an agreement covering policies upon his life, made payable by him to the bank as trustee. In the agreement Ames reserved the right to exercise any privilege or option given to him in the policies, including the right to change the beneficiary, to borrow money, to use the policies as security, to receive any dividends, earnings or other payments, to surrender any policy for its surrender value, and to terminate, modify or amend the trust agreement in whole or in part. As in the instant case, the trustee agreed to hold the policies until Ames should otherwise direct, the agreement providing that upon the death of Ames the trustee was to collect the proceeds and administer and dispose of the same as provided in the trust. Upon the death of Ames his creditors attacked the trust, contending that it did not constitute a valid *inter vivos* trust because as there was no transfer by Ames during his lifetime of any interest in the policies to the trustee there was no actual corpus of the trust while he was alive. Ames' creditors claimed that the proceeds of the policies were subject to a resulting trust (as the majority hold in the instant case) in favor of his estate and should, therefore, be paid to the settlor's personal representatives. The court held that a valid *inter vivos* trust was created and the proceeds should be held by the trustee subject to the terms of the insurance trust agreement. The opinion reads, in part:

"A life insurance policy is property and may constitute the subject matter of a trust. * * * When the beneficiary promises the insured to pay either the whole or a portion of the proceeds of the policy to a third person, the proceeds will be impressed with a trust to the extent of the promise made. * * *

"* * * The policies were contracts between the insured and the insurers for the payment of stipulated sums by the latter to the trustee as the nominee of the insured upon the happening of a certain contingency, namely, the death of Ames. * * * The date of the death of the insured merely fixed the time when the obligation of the insurers to pay and the right of the beneficiary to receive the proceeds of the policies became enforceable. The trust agreement and the change of beneficiaries, however, became effective during the lifetime of the settlor. The contingent right to receive the proceeds of an insurance policy is not impaired by the unexercised right or privilege of the insured to designate another beneficiary. * * * A policy of insurance is not deemed an asset of the estate of the insured unless it is made payable to him, his executors or administrators. The mere fact that the insured may change the beneficiary does not make the policy or its proceeds a part of his estate. Neither the policies nor their proceeds constituted a part of the estate of * * * Ames. Since his death, the trust agreement is merely evidence of the trustee's contract under which it must collect the policies and hold the proceeds for the purpose of the trust."

See also *In re Albert Anderson Life Ins. Trust* (1940) 67 S. Dak. 393, 293 N. W. 527; *Fidelity Trust Co.* v. *Union Natl. Bank, supra; Gordon* v. *Portland Trust Bank*, (1954), 201 Ore. 648, 271 P. (2d) 653.

The majority opinion states: "Nor does appellant rely chiefly upon a contention that the agreement is invalid because revocable at will. This point we do not now decide though the invalidity of an instrument of this character, because of its revocability, is strongly intimated in *Gentry* v. *Bailey*, 6 Gratt. (47 Va.) 594, 603. * * *"

The *Gentry* case (1850) was cited in *Hall* v. *Hall* (1909), 109 Va. 117, 63 S. E. 420. The case of *Lightfoot's Executors* v. *Colgin* (1813), 5 Munf. 42, was also cited. Neither of these cases dealt with life insurance trusts. However, in all three cases it was held that the husband in his lifetime had the legal right to dispose of his personal property to the exclusion of the wife. Quoting from Judge Baldwin's opinion in the *Gentry* case, (6 Gratt. (47 Va.), at p. 604), it is said:

"* * * The circumstances that the gift is to become effectual during his life, or after his death, is immaterial; for, as the law confers upon him the power to alienate his whole ownership of

the property, so he is not restrained from giving away a part of that ownership, whether the gift is to take effect before his death, or from that period * * *."

It will be observed that in the *Lightfoot* case, the settlor reserved to himself *the possession* and control of the property during his life. There the possession had never been parted with.

Suffice it to say that the *Gentry* case does not hold, as intimated in the majority opinion, that a trust agreement is invalid because revocable at will. Later cases are to the contrary. The majority opinion itself seems to concede that the suggestion as to the effect of the revocability of the trust is without substance when it states that had the writing evidenced an intent to convey a present estate or interest "though distributable after death, to designated beneficiaries, *whether the maker died testate or intestate,* it would have been valid as an *inter vivos* trust."

The majority opinion further observes: "Appellees rely upon the decision of *Russell's Ex'rs* v. *Passmore,* 127 Va. 475, 103 S. E. 652, and *Cohn* v. *Central National Bank,* 191 Va. 12, 60 S. E. (2d) 30. As bearing upon the question here presented, it is sufficient to say that those two cases are readily distinguishable because in each the instruments disclosed *an intent* to create a present trust; an interest was conveyed *in praesenti* to the trustee, and neither instrument was *made dependent* upon the existence of a will as a condition precedent to its efficacy." (Italics supplied)

The two Virginia cases referred to do decide questions involved in the instant case, and they cannot be brushed aside by the phrase that they are "readily distinguishable". Our holding in the *Russell* and *Cohn* cases is in accord with the majority rule in this country. Scott on Trusts, *supra,* relied upon in the majority opinion, holds: "The mere fact that those rights can be terminated at any time by the insured, and that the rights of the beneficiaries of the trust are enjoyable only after the death of the insured, and that the trustee has no active duties until the death of the insured, (as in the instant case), *does not prevent a trust from arising immediately.* * * *". See Restatement of Trusts, § 57, *supra;* Personal Life Insurance Trusts (Smith), § 17, at p. 74, *supra,* and cases there cited.

We said in *Russell's Executors* v. *Passmore, supra,* (127 Va., at p. 498):

"Although the power of revocation is reserved, the trust is as good and effectual as if irrevocable, until the power (of revocation)

is exercised." 1 Perry on Trusts, note (a), p. 114; Idem. sec. 104, p. 137.

The opinion continues:

"A valid equitable assignment may, of course, be conditional. And if the condition be a subsequent condition, although it has power to divest the equitable title to the gift, *yet if that condition does not arise, the title, by relation, is regarded as complete and absolute from the time of the gift.* And when such condition involves a *possible revocation* of the gift by the donor in his lifetime, on his death without having exercised such power, upon the same principle as that which is involved in gifts *causa mortis (Basket* v. *Hassell,* 107 U. S. 602, 2 Sup. Ct. 415, 27 L. ed. 500), *the equitable title does not await until after the death of the donor to pass to the beneficiary, so as to become a testamentary disposition, but is regarded as having passed in the lifetime of the donor at the time of the gift*—where the gift is in proper form to be effectual, as, of course, is unquestionably true *where possession of the subject of the gift is given by the donor to a trustee who accepts the trust, all in the lifetime of the donor.*" (Italics supplied) 127 Va., at pp. 499, 500. See also *Cohn* v. *Central Natl. Bank, supra.* There is no authority cited in the majority opinion holding to the contrary.

The insurance trust created on December 10, 1949, is not, in my opinion, rendered testamentary in character because of the powers reserved by the settlor under the terms of the trust agreement. The fact that Bickers reserved the right to withdraw any or all of the policies held by the bank as trustee, and the fact that the trust agreement provided that the trustee's only rights in the policies "prior to the death of the settlor, are to hold the policies in safe keeping until and unless they are withdrawn by the settlor" do not condemn the trust instrument. These provisions do nothing more than reserve to the insured the right to change the beneficiaries of the policies or even to cancel the policies. Neither or both of said provisions render the trust void *if the right is not exercised.* They merely preserve rights that are inherent in life insurance policies. This, I believe, is in accord with the overwhelming weight of authority in this country.

Considering the second contention of Mrs. Bickers, *viz:* That no interest passed under the trust agreement to anyone prior to Bickers' death; I concede it to be fundamental that some interest must have passed to some other person prior to the death of the

settlor in order to render the trust a valid *inter vivos* trust; otherwise it would fail because not executed with the formalities requisite to the making of a will. *Spinks* v. *Rice* (1948), 187 Va. 730, 47 S. E. (2d) 424. This is the extent of the holding in *Allen* v. *Hendrick*, 104 Ore. 202, 206 P. 733, 741, cited and relied upon by the majority.

The majority opinion states that it was not intended by the settlor that the insurance trust agreement become effective until after his death. This statement fails to take into account the fact that the insurance trust creates definite, contingent limitations in favor of the widow and the four daughters of the settlor, subject to conditions precedent, which contingent limitations are present interests passing prior to Bickers' death; thus preventing the insurance trust from being testamentary in character. Clearly, this is our holding in *Russell's Executors* v. *Passmore, supra*, which is buttressed by the other authorities heretofore cited.

It will be remembered that Bickers' will, which was executed on the same day the insurance trust was created, after providing for specific legacies to one daughter, left the balance of his estate, real and personal, to his wife and four daughters equally, thus placing the wife and daughters on the same basis. Bickers' manifest intent was to do the same with the proceeds from the insurance policies under the trust agreement. There it was provided that if his widow elected to take under the will the trustee would deliver to her one-fifth of the insurance proceeds and a like share to each child. However, if the widow renounced the will, thus altering Bickers' plan of distribution, she would receive one-third of his personalty and his daughters would each receive a one-sixth share. Obviously the insurance trust was executed to partially compensate the daughters for this contingency by providing that if the widow did renounce the will her interest in the proceeds from the insurance would be eliminated.

It is clear that the insurance trust created alternative contingent limitations in favor of the widow and children, and these interests passed to them when the insurance trust was delivered to the bank, the beneficiary in the policies. One contingent limitation was in favor of the wife, *i.e.*, if she did not renounce the will the trustee would deliver one-fifth of the insurance proceeds to her. Such is a valid springing limitation. Scott on Trusts, *supra*, § 130; Restatement of Property, § 25, comments (e) and (f), and § 46, comment 1.

Minor on Real Property, 2nd Ed., (Ribble), Vol. 1, § 787, p. 1025, dealing with a contingent springing limitation, has this to say:

"A springing limitation is *contingent* (corresponding to a *contingent remainder*), whenever it is limited to a *person unascertained or not in being* or upon the happening of an *uncertain event or condition precedent*, there being no preceding estate, or no sufficient one, to support it as a *contingent remainder*. In other words, wherever the limitation, but for the *initial absence* of a sufficient preceding estate, would be a valid *contingent remainder*, it will operate as a *contingent springing limitation.* * * *

"Thus, a limitation to the heirs, heirs of the body, issue, unborn child, etc., of B (a living person), without a preceding estate of *freehold*, or with no preceding estate at all, is a *contingent springing limitation;* as would also be a limitation to B upon the marriage of A; or a limitation to such of B's children as shall attain the age of twenty-one, B having none of that age at the time of the gift, etc." (Italics those of the author)

Such contingent limitation constituted an interest passing to the wife when the insurance trust was executed and delivered to the trustee who was the beneficiary in the policies. This interest, of necessity, passed to the wife prior to Bickers' death, subject to the condition that she would accept the terms of the will. As this was not a contingent remainder no preceding estate was necessary to support it.

If the widow decided to take under the will the condition would be fulfilled and her right to one-fifth of the insurance proceeds under the trust became absolute. The condition that the widow accept the terms of the will did not render the limitation to her testamentary. On the contrary, the interest passing to her was a present interest subject to the condition that she accept under the will; while the interest passing to the children was absolute, being affected in amount only by the action of the widow. Thus, (contrary to the majority holding), the limitation to the widow was in no way dependent upon the provisions of the will for its efficacy. It did not set out an interest determined by what the will provided. It constituted a present interest by way of limitation, subject to the condition which would occur or would not occur after Bickers' death by the act of the widow.

It is many times asserted in the majority opinion, as if to gain strength by repetition, that if Bickers had died without a will the

trust would have been wholly inoperative. The trust was not in any wise dependent upon a will except with respect to the number of shares into which the proceeds from the insurance policies were to be divided. In all other respects the trust agreement is complete and wholly operative without reference to a will. The trustee for the two daughters is given specific and complete directions in the trust agreement itself for executing that trust.

If there had been no will, then there would have been no opportunity for the widow to reject it, and it would then have been at most a matter for judicial determination whether the widow would take a fifth of the insurance proceeds or whether the whole trust would fail. That point is, however, only a matter of speculation, because at the death of Bickers *there was a will*, there were insurance policies in the hands of the trustee, both the subject and the terms of the trust were certain and definite, no legal difficulty of any kind was in the way of exact execution of the trust according to its own terms, and the existence or non-existence of a will does not affect the controlling question here, which is, whether or not the trust agreement was in fact a testamentary writing and not what it purported to be.

The leaving of a will was a fact of independent significance preliminary to its acceptance or renunciation by the widow.[1] The disposition of property made by Bickers in his will did not affect the limitation nor did it affect the rights of any person or persons who would receive a portion of the insurance proceeds under the trust agreement. The absence of a will could affect only the division of the proceeds of the policies among the widow and children.

Thus a contingent limitation passed to the widow and the four children of the settlor prior to his death, and the insurance trust is not rendered testamentary, but on the contrary, constitutes a valid *inter vivos* trust. *Russell's Executors* v. *Passmore, supra; Cohn* v. *Central Natl. Bank, supra; Gurnett* v. *Mutual Life Ins. Co., supra; Tootle-Lacy National Bank* v. *Rollier,* 341 Mo. 1029, 111 S. W. (2d) 12; Scott on Trusts, *supra,* § 57.3, and cases there cited; 1 Perry on Trusts, note (a), p. 114; Idem. sec. 104, p. 137; Personal Life Insurance Trusts (Smith) (1950), *supra,* § 17, p. 74;

---

[1] For an interesting article dealing with this subject, see "Judicial Treatment of Testamentary Dispositions to Amendable and Revocable Inter Vivos Trusts", Virginia Law Review (Oct. 1953), Vol. 39, No. 6, p. 817.

Restatement of Trusts, *supra*, § 57, comment (f); 27 Rocky Mountain Law Review 240.

As aforesaid, the majority opinion is contrary to the overwhelming weight of authority in this country. It places us not in the majority or minority class but in a class by ourselves. No authority is cited attempting to sustain the result reached. There is neither a majority nor a minority rule holding as does this opinion.

. I feel that the case was carefully considered and correctly decided by the learned chancellor in the court below and, in my view, the decision should be affirmed.

EGGLESTON and BUCHANAN, JJ., join in this dissent.